180 So. 277

**NEW YORK LIFE INS. CO. v. HORTON.**

8 Div. 810.

Supreme Court of Alabama.

Feb. 24, 1938.

Rehearing Denied April 21, 1938.

A. H. Carmichael, of Tuscumbia, and Stokely, Scrivner, Diminick & Smith, of Birmingham, for appellant.

J. Foy Guin, of Russellville, for appellee.

KNIGHT, Justice.

Suit upon a policy of insurance, and the appeal is from a judgment in favor of the plaintiff.

The plaintiff stated her cause of action in one count, and the pleadings thereto were in short by consent, the general issue, with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, including a plea of tender in the sum of $129.91; and with like leave to the plaintiff to give in evidence any matter which, if well pleaded, would be admissible in reply to such defensive matter, to have effect as if so pleaded.

The appellant on June 2, 1927, issued to James M. Horton, its policy of insurance on the life of said Horton, with the plaintiff, his wife, as the beneficiary therein. Originally, the face amount of the policy was $5,000, but at a later date, by agreement, the face amount was reduced to $2,500.

As originally written, the policy provided for the payment of the premiums on an annual basis, such premiums being due and payable on June 2d, in each year. The payment of premiums was subsequently changed to a quarterly basis, so that thereafter the payment became due and payable on June 2d, September 2d, December 2d, and March 2d, in each year.

It is without dispute in the evidence that the insured permitted his policy to lapse on two occasions for nonpayment of the quarterly premiums. The premium due on September 2, 1935, was not paid on that day, nor was it paid within the grace period, and as a result thereof the policy lapsed. The premium due on December 2, 1935, was not paid on that date, nor within the grace period, and the policy again lapsed.

The policy and the application therefor, a copy of which is attached thereto, constituted the entire contract between the insurer and insured by the terms of the contract, and the policy further provided that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this policy when issued."

The policy contained, among other provisions, the following provision as to reinstatement:

"Reinstatement.—This policy may be reinstated at any time within five years after any default, upon written application by the insured and presentation at the Home Office of evidence of insurability satisfactory to the Company and upon payment of overdue premiums with five percent interest thereon from their due date. Any indebtedness to the Company at date of default must be paid or reinstated with interest thereon in accordance with the loan provisions of the policy."

The first ground of defense to the suit is based upon the application for reinstatement executed by the insured under date of October 24, 1935, and which was approved on behalf of the company on October 30, 1935, by G. E. Shields, cashier of the Birmingham branch office of the appellant.

The second ground of defense to the action is based upon the application for reinstatement executed by the insured under date of February 15, 1936, and the reinstatement was made on February 19, 1936, Mr. Shields acting for and on behalf of the insurer.

The second application for reinstatement is in the following language:

"Theodore A. Toering, Exhibit No. 2. Ap.
Application to the New York Life
Insurance Company
Home Office:
51 Madison Avenue, Madison Square,
New York, N. Y.
For Reinstatement of Policy No.
9876779 Amount, $2,500.

I hereby apply for the reinstatement of the above numbered Policy which lapsed for non-payment of premium due on the 2nd day of December, 1935, and, for the purpose of inducing the Company to reinstate said Policy, I make the representations contained in my answers to the following questions:

| 1. | Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this Policy was issued? (If not, give details.) | Ans. Yes. |

**2.** Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted or been treated by any physician or physicians? (If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician, and the date of and reasons for consultation or treatment.) Ans. No.

**3.** Has any Company or Insurer, within the past two years, examined you either on, or in anticipation of, an application for life insurance, or for the reinstatement of life insurance, WITHOUT issuing or reinstating such insurance? (if so, give name of each Company or Insurer.) Ans. No.

If the evidence of my insurability is satisfactory to the Company and it has received all sums the Policy requires to be paid for reinstatement, then, and not until then, said Policy shall be deemed reinstated. If said Policy is not so reinstated, I agree to accept return of all sums paid in connection with this application, without interest.

I hereby certify that the foregoing answers are full, complete and true, and agree that the Company believing them to be true shall rely and act thereon.

Dated at Moulton, Ala. this 15th day of Feb. 1936.
Witness Clyde H. Kimbrough
Address T. V. A. Camp, Ala. -11-Martin, Ala.
    Signature of Insured James M. Horton
My Post-Office address is Moulton, Ala.
Approved by G. E. Shields, Cashier,
On the ——— day of Bir-Feb 19 1936, 19———
Received
Birmingham Branch
Feb 19 1936
N. Y. Life Ins. Co.
Ans'd ———."

We do not set out application on which the first reinstatement was had on October 30, 1935, as it is, with exception of dates, in substantially the same language as is the second application, and in this opinion we deal largely with the second application.

It is to be noted that in each of his applications for reinstatement the insured stated that, to the best of his knowledge and belief, he was in the same condition of health as he was when the policy was first issued, and that within the past two years he had not had any illness, disease, or bodily injuries, or had not consulted or been treated by any physician or physicians.

It is also to be noted that in his application for the second reinstatement the insured admitted that the policy of insurance had lapsed for nonpayment of premium due on December 2, 1935.

It was the contention of the defendant—appellant—that the insured's statements made in his application for reinstatement on February 15, 1936, were false in a number of material particulars, but the chief or real contention was that the insured misrepresented the condition of his health. It was the defendant's contention that at the time of making the second application for reinstatement the insured was suffering from an incurable malady, to wit, Hodgkins disease, which not only tended to, but did in fact, cause the death of the insured sooner than if he had been free of such disease, and, therefore, the matter misrepresented increased the risk of loss under said policy.

It is insisted by appellant that under the evidence it was entitled to the affirmative charge, and that the court committed error in refusing the charge, which was duly and timely, requested. This is really the only question here argued. The appellant frankly admitted upon the argument of the case that a reversal upon any other point would be of no practical benefit.

The appellee contends that the evidence conclusively establishes that the insured did not know at the time he made the representations contained in either of his applications that he was afflicted with any serious illness, if in fact he was so affected, and that there is no evidence in the case which would justify an inference that in making his statements he had an actual intent to deceive the appellant, and that, therefore, the plaintiff, not the defendant, was entitled to the affirmative charge.

It is true that the misrepresentations relied upon in this case were made, if made at all, in the application for reinstatement of the policy, after it had lapsed, but in the case of Mutual Life Insurance

630

Co. v. Allen, 166 Ala. 159, 51 So. 877, we held that section 4579 of the Code of 1907, now section 8371 of the Code of 1923, as amended by Gen.Acts 1935, p. 194, was broad enough to include any contract or agreement as to the policy, whether it relates to the original policy, or to a renewal, revivor, or reinstatement of the same. Such has been our uniform holding since the Allen Case, supra, was decided.

Section 8364 of the Code provides:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

■ It will be noticed, as often heretofore pointed out in our decisions, that the statute is in the alternative, "unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss." If the misrepresentation falls within the second alternative, then it is not necessary that it be "made with actual intent to deceive." In fact, under the second alternative, the party making the representation may be wholly unaware that he is misrepresenting the true facts, and may be wholly innocent of any bad motive. In such case, intent or motive is not a material inquiry. Mutual Life Ins. Co. of New York v. Allen, supra; Sovereign Camp, W. O. W. v. Thompson, 234 Ala. 216, 174 So. 761; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307; Sovereign Camp, W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520; Sovereign Camp, W. O. W. v. Moore, 232 Ala. 463, 168 So. 577; National Life & Accident Ins. Co. v. Winbush, 215 Ala. 349, 110 So. 571; Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524; Sovereign Camp, W. O. W. v. Moore, Ala. Sup., 177 So. 642 [1]; New York Life Ins. Co. v. Ellis, 232 Ala. 378, 168 So. 203; National Life & Accident Ins. Co. v. Baker, 226 Ala. 501, 147 So. 427.

Appellee insists that the substantive law as declared in the Allen Case, supra, is sound, but that it is unsound in so far as it holds that a misrepresentation as to a matter which increases the risk of loss may be pleaded in bar of an action without averring an intent to deceive, and that, to this extent, the Allen Case should be overruled. Appellee entirely loses sight of the second alternative in section 8364 of the Code. We are not impressed by any argument contained in appellee's brief that the Allen Case, supra, is unsound in any particular. The principles there declared have been, in effect, reaffirmed by this court many times since that case was decided.

A number of medical experts were examined on the trial of this cause, and the evidence touching the malady which caused the death of the insured is quite voluminous.

The insured died on September 18, 1936. Prior to his death, he made written claim upon the appellant for the payment to him of permanent disability benefits, in accordance with the provisions of the policy contract. This claim was made on August 18, 1936. In his claim for payment of disability benefits the insured stated the cause of his disability was Hoskins disease (meaning Hodgkin's disease). In his answer to the question, "(a) On what date did the illness begin that led up to the present disability and what was the nature of the illness?" he stated, "Dec. 7, 1935, started with an infected tooth." In reply to further questions set forth in his claim, the insured stated that he, in the beginning of his illness, first consulted Dr. R. P. Irwin on December 7, 1935; and that he consulted Dr. James McLester, Birmingham, Ala., April 1, 1936, Dr. H. B. Goodwin, Moulton, Ala., July 15, 1936. In answer to the question, "From what date has your disability prevented you from engaging in any occupation whatsoever for remuneration, or profit?" the insured stated: "March 20, 1936, he was disabled by the trouble, however, he worked off and on few days at a time until July 15, 1936."

■■ The evidence in this case is without conflict that the said Horton died of Hodgkin's disease, and that he was suffering from that disease, certainly, as early as January, 1936, and there was testimony in the case given by Dr. Irwin, tending to show that Horton was afflicted with this malady as early as October, 1935.

Hodgkin's, the evidence shows, is a disease of unknown origin, or cause, is incurable, and always terminates fatally. Its usual course is from two to three years, though sometimes of much shorter dura-

_____
[1] Ante, p. 117.

tion, and sometimes longer, but always fatal.

The disease was recorded by Dr. Hodgkins, a noted English physician in the year 1832.

Dr. Osler, formerly fellow of the Royal College of Physicians, London, a Professor of Medicine, Oxford University, and later a Professor of Clinical Medicine in the University of Pennsylvania, says, in his Treatise on Principles and Practice of Medicine, that Hodgkin's disease is a disease characterized by enlargement of the lymph-glands, with anaemia and a fatal termination. That there are acute cases in which the disease advances rapidly and death follows in a few months, but, as a rule, it lasts from two to three years; that remarkable periods of quiescence may occur, in which the glands diminish in size, the fever disappears, and the general condition improves, but death occurs, generally, within two to three years.

Dr. Osler states that "an acute form has been described. In one case beginning, like so many cases of lymphatic leckaemia, with angina, the whole course was less than ten weeks. That Zeigler mentions two cases of death within a month."

Drs. Irwin and Dyer, who examined, made tests, and treated the insured, testified that he had Hodgkins disease in January, 1936, and possibly as early as December, 1935. Drs. McLester and Graham saw the insured on April 5 or 6, 1936, and testified that he had Hodgkin's disease, and that the usual course of the disease was from two to three years, but that it was incurable, and always terminated fatally.

That the insured died from Hodgkin's disease was not disputed. All the evidence offered by the plaintiff is entirely consistent with the evidence of the medical experts, and creates no conflict whatever in the evidence.

In the case of Ætna Life Ins. Co. v. Norfleet, 232 Ala. 599, 169 So. 225, we held that while opinion evidence is not conclusive on the court or jury, but when the opinion of experts is based upon facts such as tests and examinations, as here, and when the evidence is uncontradicted, the defendant would be entitled to the general charge. We are of the opinion that this case falls squarely within the influence of the above-mentioned case. See, also, Harris v. Nashville C. & St. Louis R. Co., 153 Ala. 139, 44 So. 962, 14 L.R.A.,N.S., 261; National Life & Accident Ins. Co. v. Spigener, 225 Ala. 655, 144 So. 813, and Alabama Power Co. v. Sides, 229 Ala. 84, 155 So. 686.

We are therefore of the opinion, and so hold, that the insured, Horton, was afflicted with a disease which materially increased the risk of loss when his application for reinstatement was made by him on February 15, 1936, and that the defendant was entitled to the general affirmative charge, with hypothesis. This charge was duly requested by the defendant, and, in refusing it, the court committed error.

For the error in refusing the general charge, with hypothesis, as requested by the defendant, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

### On Rehearing.

KNIGHT, Justice.

While we are fully persuaded that the foregoing opinion properly interprets section 8364 of the Code, and we are content to permit it to stand without qualification, yet in view of the very earnest insistence made by counsel for appellee as to the good faith of the insured in making the statements contained in his February, 1936, application for reinstatement of the policy of insurance, we will refer briefly to the same, in response to appellee's application for rehearing.

Horton, the insured, in his application for reinstatement of the policy contract, made on February 15, 1936, was asked the following question:

"Within the past two years have you had any illness, diseases, or bodily injuries or have you consulted or been treated by any physician or physicians?

"(If so, give full details, including nature, date and duration of each illness, disease or injury, the name of each physician, and the date of and reasons for consultation or treatment?)" To which question the insured answered, "No."

This answer was patently untrue. At that time, and for more than two months prior thereto, the insured was a "sick man," and was then, and had been for more than two months under the observation and treatment of a physician. Not only this, but insured had been advised by his physi-

632

cian that a thorough physical examination should be made to determine the nature of his illness. It was without dispute in the evidence that the two physicians, who were then treating the insured, had formed the opinion in January, 1936, that he was afflicted with Hodgkin's disease, which was a fatal malady. The misrepresentation of the insured that he had not consulted a physician had the effect to increase the risk of loss. Mutual Life Ins. Co. of New York v. Allen, 174 Ala. 511, 56 So. 568. If the insured had truthfully answered the question, the defendant company would thereby have been supplied the data and means of discovering the true condition of insured's health.

Under the second alternative of the statute, it would be of no moment that the insured was not aware of the fact he was afflicted with Hodgkin's disease. He was in fact a sick man, and had been for two months or more, and all the while under treatment of a physician. A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided.

But recurring to the original opinion in this case, and with reference to appellee's insistence that it is in conflict with Massachusetts Mut. L. I. Co. v. Crenshaw, 195 Ala. 263, 70 So. 768, we may add that the language of the opinion in that case is to be interpreted in the light of the issue there presented by the pleading, that is, of actual fraud, and that cases in which this authority is cited likewise had reference to such issue. Numerous decisions subsequent to the Crenshaw Case, which we have hereinabove noted, disclose that such expressions have been so construed as having reference to actual fraud, and not to cases where the misrepresentation related to matters which increased the risk of loss, and upon which representations the insurer had a right to rely, and did rely.

Application for rehearing overruled.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.