97 So.2d 562

## VULCAN LIFE AND ACCIDENT INSURANCE COMPANY

v.

### Estelle V. STANDIFER.

6 Div. 858.

Court of Appeals of Alabama.

Oct. 1, 1954.

Rehearing Denied Nov. 9, 1954.

Reversed after Remandment Oct. 22, 1957.

LeMaistre, Clement & Gewin, Tuscaloosa, for appellant.

Davis & Zeanah, Tuscaloosa, for appellee.

HARWOOD, Presiding Judge.

Suit below was upon an alleged breach of a monument insurance policy, the plaintiff and her deceased husband being jointly insured under the policy.

The complaint contains two counts, each alleging a breach of the obligation contained in the policy to furnish and erect a memorial of the retail value of five hundred dollars upon the death of insured. Each count incorporates by reference the policy sued upon.

Among the provisions contained in the policy is the following:

"C. If (1) either the Insured or Joint Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof either the Insured or Joint Insured has been rejected for insurance by this or any other company, order or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless said rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on the back hereof in a waiver signed by the Secretary; then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any declaration or in case of any claim under this Policy, shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company."

The defendant's demurrers to the complaint, and to each count thereof separately and severally, were overruled.

The defendant then filed pleas of the general issue, and several special pleas.

Pleas 1 and 2 are pleas of the general issue.

Plea 3 alleges that less than two years prior to the date of issue of the policy J. R. Standifer, Sr., consulted one or more physicians while suffering from angina pectoris, essential hypertension, and chronic bronchitis, and failed to disclose in his application that he was suffering from such diseases at the time he executed the application, and was guilty of fraud in the application for the policy sued on.

Plea 4 sets forth the provision of the policy copied above, and asserts that the insured Standifer had, within two years prior to the date of the policy, been attended by a physician for a serious disease, and before the date of said policy had had a disease of the heart and chronic bronchitis, and the fact of such diseases were not disclosed in the space on the back of the policy in "Space for Endorsements" in a waiver signed by the Secretary. The plea further sets forth the total premiums paid, and court costs, and that such amounts have been paid to the clerk of the court, which sum is tendered to the plaintiff.

Pleas C, D, and F, after setting forth the provision of the policy above mentioned and copied, avers that Standifer was not in sound health on the date of the issuance of the policy, but had essential hypertension (Plea C), or angina pectoris (Plea D), or chronic bronchitis (Plea E). Each plea further avers that the disease mentioned in the respective plea was a disease which materially increased the risk of loss, and did increase the risk of loss. Each plea further recites that the amount of the premiums and court costs have been paid into court, and makes tender of same to plaintiff.

Pleas F, G, and H, are the same, except as to the disease mentioned, essential hypertension being the disease set forth in plea F, angina pectoris in plea G, and chronic bronchitis in plea H.

The pleas set forth policy provision as to sound health, etc., and aver that before the date of the policy the insured had the mentioned disease, and that within less than two years prior to the issuance of the policy the insured had been attended by a physician for such disease. The pleas further aver that in the application for the policy the insured represented that he had had no illness and had consulted no physician within ten years prior to said application; that such statement was false, made with intent to deceive, and did deceive the defendant. Each plea further alleges that the disease mentioned therein is a disease which materially increases the risk of loss.

The plaintiff's demurrers to the above-mentioned pleas being overruled, issue was joined.

The plaintiff, Mrs. Standifer, was the first witness in her own behalf. Through her the policy was introduced into evidence. She also testified as to making proof of loss of insured's death, and that the defendant had refused to place a monument as provided in the policy.

On cross-examination she identified the proof of loss filed by her with the defend-ant, and this paper was received in evidence. Part of this proof of loss is a physician's certificate executed by Dr. Maxwell Moody, Jr., the physician attending Mr. Standifer during his last illness.

Among other things this certificate shows that the principle cause of death was myocardial infarction, and that he had previously treated the deceased on April 10, 1951 for essential hypertension, severe; angina pectoris, moderate; and chronic bronchitis, moderate.

Mrs. Standifer further testified on cross-examination that when the insured became ill in April 1951 she called Dr. Moody and he came to their home. He told the insured that he was too fat, and further that he wanted the insured to come to his office to have a cardiogram made. This the insured did two days later.

The defendant also identified through this witness on cross-examination the application by insured for the policy of insurance sued on. In response to appropriate questions on the application the insured stated that he was in good health on the date of the application, and that he had not had any illness nor consulted any physician within the last ten years. This application was later introduced into evidence by the defendant.

On redirect examination Mrs. Standifer testified that she had been with the insured practically every day since April 1951, and that she had not heard him complain at any time because of his heart; that in April 1951 she and insured made an automobile trip to South Carolina, and in October 1951 they drove to Detroit, Michigan; that insured complained of no illness, and performed his work regularly until his last illness; that he was active in church work, was Superintendent of his Sunday School, and attended ball games regularly.

Mr. Lampkin, a witness for the plaintiff, testified he was the Postmaster at University Post Office, where the insured was employed. The insured had worked regularly during the last five years, his duties not

involving too much heavy work. He had not heard insured complain of any heart condition, and at the time of his death the insured had accumulated sick leave to his credit.

On cross-examination Mr. Lampkin testified the insured would have no occasion to discuss his health with him unless the insured was requesting sick leave or explaining periods of sick leave.

Dr. Roscoe Shamblin, a physician and surgeon, testified that about a year prior to his death the insured came to him because of a hernia, for which condition he operated on the insured.

Prior to the operation Dr. Shamblin gave him a thorough examination, including an examination of his heart, and did not find anything wrong with the heart. He did find the insured suffering from high blood pressure and treated this condition for some two months prior to the operation. The insured had a normal recovery from the operation.

On cross-examination however Dr. Shamblin testified that from the examination he made he would not necessarily pick up the condition of angina pectoris since this condition is not disclosed by a physical examination, but only by a history of pain given by the patient. The record further discloses the following during the cross-examination of Dr. Shamblin:

"Q. Would it be possible, Doctor, in your opinion that Mr. Standifer was suffering from that type of disease at the time you examined him? A. I didn't get any history of it. You would have to go purely on history. That type thing wouldn't show in sedimentation rate, blood count, *electocardiogram,* anything like that wont show unless it is to such an extent that there is muscle damage.

"Q. Yes sir. From the examination you made it would then be possible that that condition had existed to some extent? A. Well, I didn't get any history of it.

"Q. Yes sir. But it would be possible if that history were not given to you that it did exist? A. Yes."

For the defendant Dr. Maxwell Moody, Jr., testified that he was a specialist in internal medicine, heart disease cases constituting over half of the practice in this field.

He first saw the insured on 10 April 1951, the patient being referred to him by Dr. J. D. Lord.

After an examination he made a diagnosis of high blood pressure, fairly severe, and angina pectoris.

According to Dr. Moody:

"Angina pectoris is a term applied to a rather severe and a rather serious type of heart trouble; to which there is an impairment of circulation in the heart itself, the blood supply to the heart itself being reduced, the patient experiencing severe pain in the chest whenever he tries to perform any unusual exertion, pain being relieved by rest as a rule and coming on with exertion. It is a common type of heart trouble and is what people usually mean when they say they have chronic heart trouble; it is most often that type of heart trouble.

"Q. You say he had high blood pressure and angina pectoris? A. Yes.

"Q. And which you say angina pectoris is a disease of the heart? Now is the high blood pressure something that usually accompanies disease of the heart of that type of disease of the heart? A. The two can occur without each other but they very frequently do occur together. High blood pressure tends to bring on angina pectoris at a younger age than a person would ordinarily have it and it tends to bring on the hardening of the arteries of the heart that leads to angina pectoris at a rather early age. Angina pectoris can be present without high

blood pressure but is more prone to occur when there is high blood pressure."

Dr. Moody further testified that there is no real cure for angina pectoris, and all that can be hoped for in such cases is to keep the condition from getting worse and permit a patient to continue with his work as long as he can in the face of his ailment.

Dr. Moody instructed the insured to rest one or two hours a day, and that he should arrange to have the mail sack which he usually carried across a street every day transported by some other method. While he did not remember specifically what he told the insured in reference to his heart trouble, it was his general policy to try and convey the impression of heart condition to heart patients without using technical terms because of the tendency of such terms to frighten some patients, but he tried to leave no doubt in a patient's mind that he had some strain on his heart and needed to do certain things.

Dr. Moody again saw the insured around the middle of January 1952, and the insured was hospitalized.

Then, according to Dr. Moody:

"A short time, a matter of a few weeks or less he was admitted to the hospital on two separate occasions. He was admitted first because of what I thought was an impending heart attack or myocardial infarction and myocardial infarction being a progression of the type of heart disease known as angina pectoris; the end stage, you might say, the real severe heart attack which follows a chronic heart disease. He was admitted to the hospital because of that and was given treatment for a period of a week or more; I don't remember exactly and was discharged somewhat improved. He went home and I believe was only home a few days before he had another severe attack and was admitted to the hospital again and died very shortly after that."

Dr. Moody stated that the cause of insured's death was myocardial infarction, and the same disease which causes the angina pectoris produces the myocardial infarction.

According to Dr. Moody the only sure way angina pectoris can be diagnosed is by the particular type of pain experienced by the sufferer. When Mr. Standifer came to him the second time in January 1952, his symptoms were very similar to the symptoms he related on his first visit in April 1951, that is severe pain in the chest, occurring during the night, for which he took nitroglycerine tablets and thereby obtained considerable relief. Such results are characteristic in angina pectoris.

The defense also introduced evidence tending to establish its plea of tender.

Mr. W. W. May, Secretary-Treasurer of the defendant company, and chief home underwriter, testified that it was part of his duties to pass upon all applications for insurance made to the defendant, or delegate the authority to some one else to do so. The purpose of the application is to determine if the applicant is a sound risk, and if the answers show an applicant has consulted a physician within the past ten years that would have a great deal of influence in determining whether he is an insurable risk.

Section 6, Title 28, Code of Alabama 1940, provides in substance that no misrepresentation or warranty made in negotiating an insurance policy or in the application therefor or proof of loss thereunder shall void the policy unless: (1) Such misrepresentation is made with actual intent to deceive, or (2) unless the matter misrepresented increased the risk of loss.

Therefore, to defeat the policy it must appear (1) The representations were false, (2) made either with intent to deceive or the matter misrepresented increased the risk of loss, and (3) the insurer relied on them to its prejudice. Liberty National Life Insurance Co. v. Trammell, 255 Ala. 1, 51 So.2d 174.

It is clear that insured's statement in the application to the effect that he had not consulted a physician or had any illness within ten years prior to the application was false.

We think the evidence also tends to establish that the defendant relied upon such representations in the application.

Section 6, supra, being in the alternative, we pretermit consideration of whether the misrepresentation was made with intent to deceive, but approach our review from the second alternative, that is, did the matter misrepresented increase the risk of loss.

Dr. Moody's testimony was to the effect that the insured was afflicted with angina pectoris, essential hypertension, and chronic bronchitis when he examined him in April 1951. Dr. Moody further testified that angina pectoris, with or without essential hypertension would definitely materially increase the risk of loss; that there is no cure for angina pectoris; that insured died on 3 February 1953 of myocardial infarction, which might be considered as the last stage of angina pectoris, and which diagnosis was confirmed by post mortem examination.

Dr. Moody's testimony stands uncontradicted unless by inference some contradiction can arise from the testimony of Dr. Shamblin, and of the lay witnesses. Clearly nothing in the testimony of the lay witnesses tends to contradict Dr. Moody's testimony as to a firm diagnosis of angina pectoris. An analysis of Dr. Shamblin's complete testimony we think fails to create such inferences. While Dr. Shamblin testified he had examined the insured subsequent to the date of the issuance of the policy and had found nothing wrong with his heart, Dr. Shamblin further testified on cross-examination that the type of examination he made would not necessarily pick up angina pectoris, the diagnosis of such condition depending almost entirely upon a history of symptomatic pains given by the patient, and is not disclosed by a physical examination.

■ It thus appears that defendant's evidence established without any material

dispute its plea G, one of the pleas upon which issue was joined, and which, if established, would furnish a defense to this action. The defendant was therefore entitled to have given its request for the general affirmative charge, with hypothesis, and the refusal of this charge was error. Metropolitan Life Ins. Co. v. Dixon, 226 Ala. 603, 148 So. 121.

■ While opinion evidence is not conclusive on the court or jury, yet when it is based upon facts such as tests and examinations, as was Dr. Moody's, and such expert evidence is undisputed, the defendant is entitled to the general charge. New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277, 282 (upon rehearing). As stated by Justice Knight in the Horton case, supra:

"The misrepresentation of the insured that he had not consulted a physician had the effect to increase the risk of loss. Mutual Life Ins. Co. of New York v. Allen, 174 Ala. 511, 56 So. 568. If the insured had truthfully answered the question, the defendant company would thereby have been supplied the data and means of discovering the true condition of insured's health.

"Under the second alternative of the statute, it would be of no moment that the insured was not aware of the fact he was afflicted with Hodgkin's disease. He was in fact a sick man, and had been for two months or more, and all the while under treatment of a physician. A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided."

Numerous other points are asserted as error in appellant's brief. In view of our con-

clusions above we find no need to discuss or consider them.

Reversed and remanded.

### After Remandment

The Supreme Court has found that we erred in our conclusion that the lower court erred in refusing the appellant's request for the affirmative charge with hypothesis.

The great weight and preponderance of the evidence shows that the insured's statement in the application for this policy, dated 1 August 1951, that he had not consulted a physician or had any illness within ten years prior was false; that the matter misrepresented increased the risk of loss; and that the insurer relied on the misrepresentation to its prejudice.

Upon further consideration after remandment to us, we are clear to the conclusion that the lower court was in error when it denied appellant's motion for a new trial, said motion reciting that verdict of the jury was not sustained by the great preponderance of the evidence; that it was contrary to the evidence; and contrary to the law of the case. Liberty National Life Ins. Co. v. Trammell, 35 Ala.App. 300, 51 So. 2d 167 (after remandment), certiorari denied 255 Ala. 236, 51 So.2d 176.

Reversed and remanded.