230 So.2d 526

**LIBERTY NATIONAL LIFE INSURANCE COMPANY, a Corporation**

v.

**Walter D. HALE.**

**6 Div. 571.**

Supreme Court of Alabama.

Dec. 11, 1969.

Rehearing Denied Feb. 5, 1970.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for appellant.

Brobston & Brobston, Bessemer, for appellee.

HARWOOD, Justice.

This is an appeal from a judgment rendered in a suit on a life insurance policy issued by the appellant insurance company.

The life insurance policy sued on had been issued to Elizabeth S. Hale in the amount of $5,000.00.

To the complaint filed by the husband-beneficiary, the company plead the general issue in short by consent, etc.

The appellant denied liability because of alleged misrepresentations by the insured in the application for the policy which the company contends were made with actual intent to deceive, or increased the risk of loss.

The case was tried before the court without the intervention of a jury. The lower court rendered judgment in favor of the beneficiary, the appellee here, for the amount of the policy, and costs.

The policy in question was issued on 1 August 1965, upon a written application executed by the insured. The application, by the terms of the policy, was made a part thereof.

The questions in the application, and the answers of the insured, pertinent to this review, are as follows:

"9. Have you been to a doctor or been confined to a hospital or institution within the past three years? Explain in No. 16.    Yes.

"1. Do you now have any illness, disease, disorder, disability, or deformity, or are you now receiving any type of treatment, or taking any kind of medicine, or is operation planned?
Explain.    No.

"13. Have you ever had or been treated for shortness of breath, asthma, attacks of pain or discomfort in chest, syphilis, epilepsy, nervous breakdown, alcoholism, or drug habit?
Explain    No.

"15. Have you ever had or been treated for: disease or disorder of the brain or nervous system, chest or lungs, heart or circulation, kidneys, stomach,

·liver, gall bladder, or any other serious illness or injury? Explain    No.

"16. List all medical consultations within the past three (3) years, all past operations, and any illness mentioned above. Cold, 1963, Dr. H. C. Springer, Bessemer."

In addition the appellant introduced into evidence Part II of the application, which was not attached to the policy, but was filled out by the soliciting agent, Albert J. Kendrick, and signed by the insured. Mr. Kendrick testified he asked the questions shown in Part II, and recorded the answers given by the insured. At no time did the insured tell Kendrick she had been in Bryce Hospital in 1964, and he had no knowledge of this fact. The questions and answers on Part II of the application pertinent to this review are as follows:

"28. Have you consulted a physician or been confined to a hospital or institution within the past three (3) years? No.

"30. Have you ever had any disease or disorder of the brain or nervous system, chest or lungs, heart or circulation, kidneys, stomach, liver, or gall bladder, or any other serious illness or injury? (Underscore which) No."

■ We interpolate here that a part of an application for insurance, even though not attached to a policy and made a part thereof, is admissible in evidence in support of a plea of misrepresentation made with intent to deceive. Independent Life Ins. Co. of America v. Butler, 221 Ala. 501, 129 So. 466.

It is appellant's contention that Mrs. Hale, the insured, was suffering from three illnesses or conditions, at the time she executed the application, each of which increased the risk of loss, and were known to the insured. The illnesses or conditions were, (1) alcoholism, (2) cirrhosis of the liver, and (3) schizophrenic reaction, undifferentiated type with sociopathic personality.

The undisputed evidence shows that on 9 December 1964, Mrs. Hale was committed to Bryce Insane Hospital on order of the Probate Judge of Jefferson County. Three persons, including Dr. Law Lamar Ager, and insured's husband executed statements prior to the issuance of the order of commitment. In Mr. Hale's prescribed interrogatories, he answered "Yes" to the question as to whether his wife's impaired mental condition could be attributed to the "injurious use of alcoholic drinks" and in answer to the question: "What is the alleged cause of his (her) insanity?", he stated "Drink."

Dr. Ager testified he examined Mrs. Hale at the request of her family to evaluate the question of her admission to Bryce Hospital. Mrs. Hale was in Jefferson County jail. At this time Mrs. Hale was drinking excessively, and was threatening and combative. He made a diagnosis of "Schizophrenic reaction, undifferentiated type vs. Sociopathic personality."

Mrs. Hale was committed to Bryce Hospital on 11 December 1964. There she was under the immediate care of Dr. J. C. Thompson, a physician and psychiatrist. He made a physical examination of Mrs. Hale and noted spider angioma on her upper thoracic region. This manifestation indicates a possibility of liver damage. However, being unable to feel nodules by palpation of the liver, he did not make a diagnosis of cirrhosis of the liver, nor did he make a diagnosis of alcoholism. After a psychiatric study of Mrs. Hale, a diagnosis was made of schizophrenic reaction, paranoid type. Mrs. Hale made some improvement, but was not in any way cured when she was permitted to leave the hospital on 5 February 1965, on a seven day leave. Any prognosis of her condition was to be considered as guarded. Mrs. Hale did not return to Bryce Hospital until 20 September 1965.

It was during this interval between her hospitalizations in Bryce that Mrs. Hale

applied for and obtained the insurance policy here sued on.

Dr. Thompson testified that in his opinion Mrs. Hale had the same psychosis during this interval as she was found to have during her first stay in Bryce Hospital, and her readmission.

Dr. Thompson further testified that during this interval Mrs. Hale could probably have been able to transact business, and that the indications were that she would deny hospitalization for any mental disorder, since she considered she was confined by a plotting husband. She would, however, be aware and know she had been in a hospital.

In September 1965, proceedings were again instituted to have Mrs. Hale recommitted to Bryce Hospital. Again, Dr. Ager examined Mrs. Hale in the Jefferson County jail. At this time he found her on the edge of delirium tremens, and she also had her basic illness of schizophrenic reaction. Alcoholism was added to the schizophrenia diagnosis made by Dr. Ager at this time.

Dr. Ager further testified that persons afflicted with schizophrenic reactions, paranoid type, are considered as suffering from a serious illness, and have higher suicide rates and higher homicidal tendencies and shorter life expectancies than normal persons. In Dr. Ager's opinion, had Mrs. Hale been examined on 22 June 1965 (date of application) and on 1 August 1965 (date of policy), a psychiatrist would have detected her condition, though a lay person would not have found her abnormal unless she were crossed.

Mr. Hale in his interrogatory in the second commitment proceedings, executed on 16 September 1965, stated his wife's mental abnormality had existed for five years.

The same diagnosis of mental disability was made by the staff of Bryce Hospital on this second admission as had been made on her first stay. She was released for a trial visit to her husband on 8 November 1965. She was again released for a temporary visit on 6 April 1966, and did not again return to Bryce Hospital.

On 13 December 1966, Mrs. Hale was admitted to the Lloyd Nolan Hospital in Jefferson County. The diagnosis on admission was alcoholism, cirrhosis, and decompensated carcinoma.

In Lloyd Nolan Hospital Mrs. Hale was under the care of Dr. Arthur King Black, a specialist in internal medicine. His initial diagnosis of Mrs. Hale's ailments was chronic alcoholism and Laennec's cirrhosis. In 90% of the cases of Laennec's cirrhosis, the condition is caused by chronic alcoholism. Mrs. Hale died in the hospital on 8 January 1967. An autopsy was performed on her body and among the findings made as a result of the autopsy was that Mrs. Hale had been afflicted with Laennec's cirrhosis in a late stage.

Dr. Black testified that cirrhosis develops over a period of years. While spider angioma may be present without cirrhosis, they are a good indication of cirrhosis, though a definitive diagnosis of cirrhosis is not made unless the liver is hard or nodular. Based upon a finding of spider angioma on Mrs. Hale in December 1964, and his observation of her condition in December 1966, it was Dr. Black's opinion that Mrs. Hale had cirrhosis of the liver in 1964. Cirrhosis decreases a person's normal life expectancy, and regular use of alcohol is detrimental to a cirrhotic condition.

Dr. Derrill Crowe examined Mrs. Hale in connection with her application for the insurance policy here sued on. He asked Mrs. Hale all the questions on the application and recorded her answers. He did not know, nor did she tell him she had ever been a patient in Bryce Hospital, or that she had ever been diagnosed as having, or been treated for, a mental disorder. His physical examination was a limited one and he saw no symptoms of alcoholism during this examination.

Mary Edna Hester testified as a witness for the appellant. For seven years she has been a supervisor in the underwriting department of the appellant company, and has been an underwriter for eighteen years. She has attended underwriting institutes and has discussed underwriting with other underwriters. She is a member of national and state underwriter organizations, and is familiar with the customs and practices of life insurance companies in general.

The appellant company would not issue a policy to a person who had been diagnosed and treated for schizophrenic reaction, paranoid type, within six years prior to the date of the application of such person for an insurance policy. After six years a policy, if issued, would be at increased premiums.

Miss Hester reviewed the underwriting file on Mrs. Hale with respect to the policy issued to Mrs. Hale. At the time the policy was issued, there was no information in the company's file showing Mrs. Hale's confinement in Bryce. Had such information been available, the application for the policy would have been rejected.

Section 6, Title 28, Code of Alabama 1940, provides that no oral or written misrepresentation or warranty therein in the negotiation of an insurance contract, or in the application therefor, or proof of loss thereunder, shall avoid an insurance policy *"unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss."* (Emphasis ours.)

As before stated, the defendant-appellant's plea was in short, by consent, etc. The case was tried on the theory that Mrs. Hale was afflicted with certain disabilities at the time she executed the application for the policy, and in such application made misrepresentations with actual intent to deceive, or misrepresented matters which increased the risk of loss. Either alternative would justify avoidance of the policy by the insurer.

■ Representations touching consultations with or treatment by a physician must relate to some serious ailment material to the question of life expectancy. New York Life Ins. Co. v. Zivitz, 243 Ala. 379, 10 So.2d 276, 143 A.L.R. 321; Liberty Nat. Life Ins. Co. v. Trammell, 35 Ala.App. 300, 51 So.2d 167.

■ An insurance company is entitled to all material information bearing upon the obligation it undertakes in issuing a policy. As stated in New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277, 282:

"A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided."

■ At the time Mrs. Hale executed the application in which she stated that the only physician she had consulted within the past three years was Dr. Strickland, and that for a cold. She was at this time, under all reasonable inferences to be drawn from the uncontradicted evidence, afflicted with schizophrenia reaction with paranoia. Under the expert medical evidence this condition is serious, and persons so afflicted do not have a normal life expectancy. Under Dr. Thompson's testimony, a witness for the appellee, Mrs. Hale would have known at the time she executed the application that she had been in a hospital.

The application executed by Mrs. Hale expressly authorized any physician who had attended her to disclose to the appellant any knowledge or information he had concerning her condition. The physicians on the staff of Bryce Hospital were hidden

as a source of material information by Mrs. Hale's answers on the application.

Even if it be conceded that Mrs. Hale's false answers on the application were innocent, a concession contrary to all inferences reasonably deducible from the evidence and unacceptable to us, the misleading nature of her answers is obvious, "nor can it be questioned that information thereof would have affected the conduct of the insurer to a very great degree." See Metropolitan Life Ins. Co. v. Dixon, 226 Ala. 603, 148 So. 121; Liberty Nat. Life Ins. Co. v. Trammell, supra.

It is our conclusion that under the inferences reasonably to be drawn from the undisputed evidence, Mrs. Hale was afflicted with schizophrenia at the time she executed the application, that she knew she had been in a hospital but failed to reveal this fact, and that her affliction was one which increased the insurer's risk of loss. Thus the insurer, by the terms of Section 6, Title 28, Code of Alabama 1940, was entitled to avoid the policy under either or both of the alternatives conferred by the above said section. Thus the judgment of the lower court is contrary to the undisputed evidence in the aspect pertaining to schizophrenia.

■ Implicit in the judgment for the plaintiff entered by the court below is a conclusion that Mrs. Hale was not afflicted with cirrhosis at the time she executed the application. The evidence in this regard, and it is uncontradicted, is that spider angioma were observed on Mrs. Hale at the time she was examined by Dr. Thompson at Bryce Hospital in 1964. Such condition indicates possible liver damage, but is not absolute diagnostically unless a hardening of the liver, or nodules, can be detected by palpation. Not detecting this condition in his examination, Dr. Thompson made no diagnosis of any liver condition.

Two years later, Mrs. Hale entered Lloyd Nolan Hospital and was diagnosed among other things, as having Laennec's cirrhosis, and died from this disease. An autopsy confirmed that this disease was in a late stage.

Dr. Black testified that while it was possible for a person to have spider angioma without cirrhosis, he could think of no disease other than cirrhosis that would cause the angioma, although without finding nodules in the liver, a diagnosis of cirrhosis is not made on the basis of the presence of angioma.

Dr. Black further testified that in view of the presence of angioma in December 1964, and Mrs. Hale's death about two years later from cirrhosis, it was his opinion that Mrs. Hale had cirrhosis in December 1964, and that this condition continued until her death from that disease in January 1967.

All of the medical testimony was to the effect that cirrhosis is a disease tending to shorten the normal life expectancy of one so afflicted.

In Grabove v. Mutual Ben. Health and Accident Assn., 241 Ala. 88, 1 So.2d 297, the principle is stated that "the definite testimony of members of the medical profession, expert in their line, based upon facts within the knowledge and discernment of men of learning and experience, when not in conflict, nor opposed by other evidence, does call for the affirmative charge with hypothesis." (Citations omitted.)

We are, of course, not here concerned with the giving or refusal of the affirmative charge with hypothesis, but rather with whether the judgment of the lower court should be disturbed because the preponderance of the evidence is so decided as to convince us that the judgment is palpably erroneous. See Scott v. Scott Paper Co., 280 Ala. 486, 195 So.2d 540.

The only evidence tending to in anywise question Dr. Black's testimony is the fact that Dr. Thompson, the physician at Bryce Hospital, did not make a diagnosis of cir-

rhosis. But this omission we think is explained by the testimony of the medical experts that a diagnosis of cirrhosis is not made solely on the basis of the presence of angioma, in the absence of nodules being felt in the liver. The compelling fact remains that Mrs. Hale did die of cirrhosis of the liver in a late stage in just over two years from the observation of angioma on her body by Dr. Thompson.

From a close study of the evidence presented, it is our conclusion that the only reasonable inference that can be drawn from a preponderance of the evidence, is that Mrs. Hale was afflicted with cirrhosis of the liver in December 1964, a disease which decreases a normal life expectancy, and was so afflicted at the time she executed the application on which the policy was issued.

The appellant was therefore entitled to avoid the policy under the second alternative presented by Section 6, Title 28, Code of Alabama 1940, that is that the matter misrepresented, i. e. the presence of cirrhosis at the time of the execution of the application, increased the risk of loss.

In our opinion the judgment for the plaintiff rendered in this case is so plainly contrary to the preponderance of the evidence as to convince us that it is palpably erroneous, and is due to be reversed.

Evidence was presented below by both parties going to the question of whether Mrs. Hale was an alcoholic at the time she executed the application. In view of our conclusion that this judgment must be reversed on the grounds above discussed, we see no need to further lengthen this opinion by a consideration of this question which is argued rather fully in the respective briefs.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.