318 So.2d 683

Patricia M. HERRICKS

v.

The MUTUAL LIFE INSURANCE COMPA-
NY OF NEW YORK, a corporation.

SC 1157.

Supreme Court of Alabama.

Aug. 21, 1975.

James L. Shores, Jr., Birmingham, for
appellant.

James W. Gewin, Birmingham, for appellee.

MERRILL, Justice.

Patricia M. Herricks brought suit to recover the proceeds of a life insurance policy on her deceased husband, Douglas C. Herricks, Jr. She appeals from a summary judgment rendered in favor of the defendant, The Mutual Life Insurance Company of New York (MONY).

Herricks had worked in insurance business many years. According to plaintiff's deposition, her husband once worked for MONY but the father of his then wife "started an insurance company and offered Doug a job."

Herricks applied for the policy in 1969 and its effective date was July 11, 1969. Renewal premiums were payable on each anniversary date. The policy lapsed twice, in July, 1971 and July, 1972.

The policy contained the following "RE-INSTATEMENT" clause:

"If any premium is not paid by the end of the grace period, and if this Policy has not been surrendered for cash, it may be reinstated at any time within 5 years after the due date of the premium first in default upon (1) evidence satisfactory to the *Company of the Insured's insurability* and (2) payment of all overdue premiums and payment or reinstatement of any indebtedness to the Company, together with payment of a compound interest on such premiums and indebtedness at 5% per year." (Emphasis added.)

On each occasion, there was no premium payment within the 30-day grace period, and it was necessary for Herricks to execute an application for reinstatement. These applications were executed on October 16, 1971 and September 23, 1972. Herricks died on August 9, 1973, as a result of a hepatic coma brought on by cirrhosis of the liver. MONY subsequently rescinded the policy, Tit. 28, § 6, Code 1940, because of alleged misrepresentations made by Herricks in the applications for reinstatement.

Question No. 6 in the two applications for reinstatement appeared as follows:

"6. Are you, so far as you know:

a) In impaired physical or mental health?

b) Under any kind of medication or on any diet?"

Herricks responded "No" to both parts of the question on both applications for reinstatement. It is undisputed that the answers on both applications for reinstatement were in Herricks' handwriting and that he prepared them and delivered or mailed them to MONY's agent.

Dr. Robert L. Whitten, however, testified in his deposition that he observed Mr. Herricks on October 1, 1971, that Herricks was suffering from cirrhosis of the liver, that he placed Herricks on a strict diet, and that he informed him that he, Her-

ricks, had a serious illness which could be fatal and he should "never, ever take another drink as long as he lived."

Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ARCP 56(c).

Plaintiff contends that there is a genuine issue of material fact as to whether MONY had such knowledge of Herricks' alcoholism as to prevent it from relying on Herricks' misrepresentations as a defense; and that the credibility of MONY's agent, Richard S. Bullock, Sr., who handled the original application and the two applications for reinstatement, is put in issue by the plaintiff's counter-affidavit of Clarence E. Bishop, Jr.

Bullock's affidavit, filed August 15, 1974, reads in part as follows:

"* * * At the time Mr. Herricks executed each of these applications for reinstatement he denied any 'illness, disease or injury' within the five years preceding the date of the respective applications. He also denied, in each application for reinstatement, any consultation, examination or treatment by any physician; and he denied any impairment to his physical or mental health, and denied that he was under any medication or on any diet on each occasion.

"At the times that Mr. Herricks, Jr., executed each of the applications for reinstatement I was unaware that he was an alcoholic; I was unaware that he was being treated for his alcoholism in October 1971; and I was unaware that he had cirrhosis of the liver at the time he executed either of the applications for reinstatement. Douglas C. Herricks, Jr. who was personally known to me, never told me of his problem with alcoholism; he never told me of his liver condition; and I knew of neither of these condi-

tions at the times Mr. Herricks executed the applications for reinstatement. I have made inquiry of the employees of this office and have been assured that no person was familiar with Mr. Herricks' alcoholism, either at the time he executed the application for coverage originally in 1969, or at the times he executed the applications for reinstatement in 1971 and 1972. Moreover, none of the employees of this office and no representative of MONY to my knowledge was aware that Mr. Herricks was suffering from cirrhosis of the liver prior to his death."

Bishop's counter-affidavit stated that he became acquainted with Herricks in 1956. They were both in the insurance business. Bishop worked for Protective Life Insurance Company. Bishop later (in 1965 and 1966) employed Herricks for a time and sent him to Indiana. All of this time, Herricks "continued his drinking." The only statement in Bishop's affidavit that forms a basis for plaintiff's argument that Bullock, MONY's agent, knew that Herricks was an alcoholic is paragraph 7, which reads:

"Based upon my years of experience in the life insurance business, it is my opinion that all persons engaged in selling life insurance who were acquainted with Douglas C. Herricks, Jr., were aware of and knew of his problem with alcohol and the affect that it had upon his insurability."

That statement does not name Bullock, shows no circumstances under which Bullock had opportunity to learn of Herricks' "problem with alcohol" and, without more, it would not be admissible in evidence, and is far too general to raise a genuine issue of material fact as to knowledge on the part of Bullock or to his credibility.

We need not, however, reach either of plaintiff's contentions. Even assuming that Bullock knew that Herricks was an alcoholic, and that he had cirrhosis of the

liver, MONY was nevertheless entitled to the summary judgment.

■ The rule in this state is that ordinarily, knowledge by the local agent authorized to solicit insurance, take and forward applications, and collect premiums, of misrepresentations by the applicant, is not available as a waiver of such breach in the face of a stipulation to the contrary in the policy. *First Nat. Life Ins. Co. of America v. Rector,* 225 Ala. 116, 142 So. 392; *North Carolina Mutual Life Ins. v. Kerley,* 215 Ala. 100, 109 So. 755; *Jones v. Liberty Nat. Life Ins. Co.,* 35 Ala.App. 52, 47 So.2d 222, affirmed 254 Ala. 111, 47 So.2d 227.

■ The evidence established that Bullock was only a soliciting field underwriter. MONY could not be charged with facts known to such an agent but not contained in the original written application or application for reinstatement and, as a result, could not be held to have waived the misrepresentations of Herricks. As pointed out, post, in this opinion, there was no evidence by affidavit or otherwise to show that MONY or any of its agents had knowledge of the misrepresentations.

Plaintiff argues another contention. On the second page of the original policy application appeared the following questions:

"4. Have you or anyone else proposed for insurance, so far as you know, ever been treated for or had indication of (underline applicable item):

\*   \*   \*   \*   \*   \*

d) Heart trouble, heart murmur, high blood pressure, or any blood or blood vessel disorder?

\*   \*   \*   \*   \*   \*

p) Alcoholism or drug habit?"

Herricks responded "Yes" to question 4(d) and stated that he underwent a "Co.Exam" by "Dr. Gilbert Douglas—B'ham. Ala." Herricks responded "No" to question 4(p).

At the bottom of the second page, the decedent signed an authorization for MONY to obtain any desired information from any physician who observed or treated him.

Plaintiff insists that MONY would have discovered Herricks' alcoholism had it made an inquiry of Dr. Douglas about Herricks' answer to the "heart trouble" question in the original policy application.

■ While it is true that Dr. Douglas' records do disclose that Herricks was suffering from alcoholism at the time of the issuance of the policy in 1959, Herricks could not place the burden of discovering his alcoholism on MONY by making the "heart trouble" disclosure. There was absolutely nothing in either of the applications of October 16, 1971 or September 23, 1972 for "REINSTATEMENT WITHOUT EXAMINATION" to indicate that Herricks was an alcoholic. In addition to the negative answers shown to question No. 6, supra, he also answered two of the inquiries in question No. 5 " \*   \*   \* since the date of issue of the above policy \*   \*   \* have you ever: \*   \*   \* (b) Had, so far as you know, any illness, disease or injury?" and "(e) Consulted or been examined or treated by any physician or practitioner?" by checking the "No" column.

It was also undisputed that these misrepresentations by Herricks materially increased the risk of loss to MONY; that the misrepresentations were relied upon by MONY; that had Herricks' true condition been known, the policy would not have been reinstated on either occasion, and that when Herricks' true condition was discovered, the beneficiary was properly notified that the policy had been cancelled.

The undisputed evidence is that MONY knew nothing of Herricks' true medical history prior to his death. MONY submitted the affidavit of John D. Eisner, an attorney associated with MONY. Item 10 of that affidavit appears as follows:

"10. That Mutual between the dates of August 9, 1973 and October 15, 1973 obtained from the University of Alabama

Hospital, Dr. Whitten, Dr. Gilbert Douglas, Jr., and the Jefferson-Blount-St. Clair Health Authority copies of certain medical records of the deceased which disclosed—for the first time—Mr. Herricks' true medical history including treatments for liver disease in October and November, 1971; that Mutual thereafter promptly rescinded the policy and fully refunded to Plaintiff all premiums of reinstatement made by the deceased. * * *"

Title 28, § 6, Code 1940, applicable in the instant case, provided:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

This court said in *Liberty National Life Ins. Co. v. Hale*, 285 Ala. 198, 230 So.2d 526:

"An insurance company is entitled to all material information bearing upon the obligation it undertakes in issuing a policy. As stated in *New York Life Ins. Co. v. Horton*, 235 Ala. 626, 180 So. 277, 282:

" 'A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided.' "

It was also held in *Horton*, supra, that Tit. 28, § 6, applied equally, whether it related

"to the original policy, or to a renewal, revivor, or reinstatement of the same."

The action taken by the trial court was not abrupt or hasty. The suit was filed in October, 1973, and after answer denying liability, depositions were taken December 18, 1973, interrogatories filed March 18, 1974 and answered May 28, 1974, and another deposition was taken on March 27, 1974. The motion for summary judgment, with supporting depositions, affidavits and documents, was filed August 15, and plaintiff's counter-affidavit was filed November 8. The cause was argued on November 15, 1974 and the motion for summary judgment was granted. Plaintiff filed a motion to set aside the judgment and the hearing was set for January 25, 1975. Appeal was taken on February 13, 1975.

We find no reversible error in the granting of the motion for summary judgment by the trial court because "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ARCP 56(c); *Twine v. Liberty National Life Ins. Co.*, Ala., 311 So.2d 299.

Affirmed.

HEFLIN, C. J., and MADDOX and EMBRY, JJ., concur.

JONES, J., concurs in the result.

JONES, Justice (concurring in the result):

I have had considerable difficulty with this case. I do not agree with that portion of the opinion which holds that, even if Bullock knew that Herricks was an alcoholic and that he had cirrhosis of the liver, MONY was still entitled to a summary judgment. I concur in the result, however, because I agree that all admissible portions of Bishop's affidavit are insufficient to raise even an inference to rebut Bullock's denial of any knowledge of Herrick's condition.