22 So.2d 35

**STREET v. STREET et al.**

8 Div. 304.

Supreme Court of Alabama.

April 19, 1945.

Rehearing Denied May 17, 1945.

Marion F. Lusk, of Guntersville, for appellant.

Claud D. Scruggs, of Guntersville, and Hill, Hill, Whiting & Rives, of Montgomery, for appellees.

THOMAS, Justice.

On Sunday morning January 19, 1941, Oliver D. Street, age seventy-four, sustained a severe heart attack at his home in Guntersville, Alabama, where he had resided since 1940 with his second wife Mary Curd Street and their foster son Charles Alfred Street, age ten. The family physician, Dr. A. G. Finlay, was called, treated the patient, and arranged for Miss Martha Gosa, a graduate nurse, to serve as day nurse, and Mrs. Hattie Durham, a practical nurse, for night duty. Plaintiff (proponent) promptly notified testator's two daughters, viz: Mrs. Marshall Fennell, wife of Dr. Robert Fennell, and Mrs. Julia Ross, wife of Wright H. Ross of Guntersville, and a son, Mr. O. D. Street, Jr., of Montgomery, for convenience referred to as one of the "defendants". Those in Guntersville came at once and stayed over an hour, eating while there a breakfast prepared by plaintiff. O. D. Street, Jr., arrived that night or early the next morning. The other son and defend-

ant, John C. Street, was then residing in Denver, Colorado. That evening testator had a slight recurrence of the attack, and the daughters again came in response to plaintiff's summons.

The next morning testator's condition had improved and after he had been given his bath and breakfast he directed plaintiff to call Mr. Orr, testator's law partner at Albertville, and tell him to come down before going to the courthouse. Plaintiff called Mr. Orr at his home and gave him the message, but Mr. Orr stopped at his office and testator later had plaintiff call again with the added request that he come at once. Mr. Orr came promptly and arrived at the home about 9 A. M.

Plaintiff met him at the front door and showed him through the living room to testator's bedroom, and then went on with her housework. Testator told Mr. Orr that he wanted him to write his will; and the latter said he would have to get someone to bring him paper as he had brought none with him. Testator called plaintiff and sent her for a tablet of plain white paper. When she had brought this, testator told her to go out of the room as he had some business to attend to with Mr. Orr. She went out and closed the door. Mr. Orr sat at the bedside to make a draft of the will, at which time testator was in a reclining position, propped up with pillows, and apparently not suffering discomfort. He was not under the influence of sedatives, having had none since the evening before. His mind, according to Mr. Orr's testimony, was as "clear as a bell." And, according to Dr. Finlay, the attending physician, testator's mind and willpower were "strong." Mr. Orr then told testator that in view of the latter's abilities as a lawyer, he preferred that he dictate the will, and testator began dictating, and Mr. Orr writing. When testator had dictated that part of the will giving everything to plaintiff, the following took place, as related by Mr. Orr:

"I said, 'Mr. Street, I am not trying to tell you how to dispose of your property, I would not think of doing that, but I am wondering if you have not forgotten something.' He said, 'What is it that you have in mind?' I said, 'Well, you have a very valuable law library and you have two sons who are both practicing attorneys. The law library would be very valuable to either of those sons, particularly if they ever decide to practice law in

Alabama, and if not in Alabama, there are portions that would be valuable anywhere in the United States, wherever they set up a law office, and it would be of very little value to Mrs. Street, and as you know, secondhand books bring very little value on the market.' He said, 'Yes, I know that and I have thought of that. Mrs. Street will take care of all that.' I said, 'O. K.' He then dictated to me * * * this third paragraph in the will which speaks for itself, and I wrote that. So, I proceeded to his dictation to scribble down hurriedly what he said to me and when we had finished, I said, 'Who do you want to witness the will?' and he said, 'Miss Gosa and yourself.' I said 'All right,' and then I wrote the attestation clause and he said, 'Very well.' I said, 'Now, I will go down to your office, your stenographer is there, isn't she?' and he said, 'Yes.' I said 'I will run down to your office and have this put in typewritten form and I will bring it on back and we will execute it.' He said, 'No, no use of that, we will just use that that you have there.' I said, 'Mr. Street, I did not draft this with the idea it was going to be a finished document. I merely hurriedly wrote this out here with the idea as I usually do of using it as the first draft and I am a little more particular about the matter when I put it in final form and I much prefer to run down and have this typed up and correct perhaps grammatical errors in there and bring it back here and let you reread it in nicer form than it is.' He said, 'No, that is all right.' He said, 'I am perfectly aware of my condition. I am perfectly all right now and the doctor tells me so and I feel that way, but a lot of things could happen with a man in my condition before you get back from the office and we will execute that document right there like it is.' I said: 'Suppose I take it and sit here and draft it in a little better form, being of course, the same thing with reference to the disposition of property but get it in better form.' He said, 'No, we will execute it like it is, whatever is lacking there interline it.' I wrote that interlineation in paragraph one, after I did that he wrote on somewhere here the interlineation in his own hand and said, 'The words "all my property" interlined before signing.' And they were put in there before it was signed. After he positively refused to permit me to redraft the will either in his presence or at his office, I think I stepped to the door

and called Miss Gosa. There was no one in the room except he and me at the time. Miss Gosa came in and Mr. Street said, 'I want you to witness my will,' and I had the document in my hand, we were both standing near his bed. He was propped up with two pillows to his back about as I am in this chair at this time. He first signed it and after he signed it I signed it and handed it to Miss Gosa and she signed it and she retired from the room and that is about all that took place while she was there. Mr. Street wrote his name * * * on the margin of each sheet of paper the will was written on * * * before it was witnessed * * * before he even signed it.' "

Miss Gosa was on duty when Mr. Orr came, was called into testator's room and signed the will as a witness after Mr. Orr had signed it, but did not pay any attention, and later could not recall seeing Mr. Street sign his name, and could not remember whether it was Mr. Street or Mr. Orr or both who asked her to witness the will, but was positive in her statement that she was asked to witness the will and stated, "I signed after Mr. Orr." The only things she observed as to plaintiff's conduct toward testator and his conduct toward proponent at any time was that they were always congenial and Mrs. Street always suggested to testator to take care of his health. The plaintiff at the time was engaged with her duty in the kitchen.

On cross-examination, Miss Gosa said that during the time Mr. Orr was in the room with testator, his son Oliver Day Street came and called in where Mrs. Street was, and asked who was in the room at the time. Witness stated that Mrs. Street told him that Mr. Orr was in there, "and he said he wanted to go in and she (Mrs. Street) told him he better not, that they were fixing a will," and he did not enter the room at such time. On this point, however, Mrs. Street testified that Oliver Day Street, Jr., came into the kitchen where she was and made this remark, "Thought maybe Dad was changing his will, they sent him out of the room." That his father sent him out of the room.

Mrs. Durham, one of Mr. Street's nurses, testified as follows: "That night about 9 P. M. Mrs. Street asked Mr. Street, 'if she had better not call Mr. Orr.' She did not say what for. Mr. Street replied she could. She then placed a call for Mr. Orr, I do not know whether she talked to him or not. He had not mentioned it until she suggested it. I never heard him make a suggestion at any time, that Mrs. Street call Mr. Orr. * * * At that time Mr. Street 'appeared to be weak', and continued to be during the time I remained there, for four nights. * * * She asked if she could call Mr. Orr 'to see to his business.' * * *."

We have indicated the facts as detailed by Mr. Orr and other witnesses relative to the preparation of the instant will and its execution. Under our statutes and decisions, the foregoing evidence justifies an inference or a conclusion that there was a valid execution of the instant will. Code 1940, Tit. 61, § 24; Fulks v. Green, Ala. Sup., 20 So.2d 787. This is the one question urged to this court in argument of appellant's counsel and in brief.

Mr. Orr testified for proponent that testator said he had not written any other will, and that he later called testator's attention to the will as prepared at his home, suggesting that it be put in better form, and to this Mr. Street replied that he would leave it like it was, that it was a valid will. Whereupon the contestants replied with testimony of Mr. Joe Johnson, that testator came to his house and wanted to come there the next day and discuss the matter of making wills. When he came, according to appointment, and after some preliminary remarks, testator said he had been driven by environment and association and some other technicalities in making his will and stated: "I have been coerced into making what is to me a very unsatisfactory disposition of my life's earnings and I am going to try to absolve myself yet, if I have strength to hold out with my mind, I am going to make things all over."

The admission of the above testimony by the trial court was without error. So of the former testimony to like effect given by Mr. Johnson. Slagle v. Halsey, 245 Ala. 198, 15 So.2d 740; Seale v. Chambliss, 35 Ala. 19; Venable v. Venable, 165 Ala. 621, 51 So. 833; Miller v. Whittington, 202 Ala. 406, 80 So. 499; Alexander v. Alexander, 214 Ala. 291, 107 So. 835; Gilliland v. Dobbs, 234 Ala. 364, 174 So. 784; 62 A.L.R. 699, 716; 119 A.L.R. 1367; 68 Corpus Juris, pp. 1005, 1006, § 776(c).

Respective counsel on argument limited the question for decision to "will or no will." The grounds of the contest were:

"(a) that it was not Mr. Street's last will and testament; (b) that, if executed at all, it was executed as a result or by reason of duress or the undue influence of Mary C. Street, his wife, exercised upon him which caused him to execute the will."

This brings us to the feature of the case touching undue influence vel non, that induced the execution of that testamentary instrument, and the finding of the jury rejecting its probate as the last will and testament of Mr. Street on this ground.

It was noted in argument and is emphasized here that there was no motion for rehearing raising the question of preponderance of evidence against the probate of the will, but that the question was the proper submission to the jury for determination of the appropriate grounds of contest, under the scintilla of evidence rule.

It is without dispute in the evidence, other than Mr. Street's statement to Mr. Orr, that testator left several wills. For example, the one made in 1920, across the face of which is the endorsement, "This will is cancelled by me this Jan. 5, 1924," (Franklin v. Bogue, 245 Ala. 379, 17 So. 2d 405); a second or unsigned will prepared after the death of Mr. Street's first wife, and a will executed in 1935, in the presence of two witnesses, no notation of cancellation appearing thereon. The evidence further shows that in 1938 or 1939 Mr. Street made another will, the original of which has been misplaced or destroyed. This fact is shown by the testimony of Mrs. Mary Wilson and correspondence of Mr. Street, Jr., to insurance companies. The like fact is shown by the testimony of O. D. Street, Jr., and John C. Street. The evidence shows that Mrs. Street stated after testator's death that the 1938 or 1939 will would "never be found." When asked if she had destroyed or burned it, replied, "not to ask so many questions," that she "was not answering any." That will was different in material respects from the one offered for probate. Mrs. Wilson is positive of its existence, contents and the fact that Mr. Street requested her to make a copy of same.

In response to due notice to produce the several wills, proponent produced the wills of dates indicated, but failed to produce the will made in 1938 or 1939. This failure is urged as a material fact to be considered against proponent under the authorities that obtain as to suppression of testimony or evidence. It was for the jury to say whether proponent was responsible for the failure to produce, loss or destruction of the 1938 or 1939 will. The rule relative to obstructing justice appears in Code 1923, § 3472, Code 1940, Tit. 14, § 79. The general authorities are collected in 31 C.J. p. 880, § 179. In accord therewith, in Drummond v. Drummond, 212 Ala. 242, 102 So. 112, 114, is the cogent expression, "Any effort by a party * * * to suppress testimony, may be used as evidence against such party," cited and applied in American Life Ins. Corp. v. Anderson, ante, p. 588, 21 So.2d 791.

The rule in this jurisdiction as to the burden of proof is that, until contestants produce proof affording a reasonable inference of a dominating confidential relationship by a favored beneficiary, who was unduly active in and about the execution of the will, the burden of rebuttal is not cast upon proponent. Fulks v. Green, Ala.Sup., 20 So.2d 787;[1] Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278; Cook v. Morton, 241 Ala. 188, 1 So.2d 890; Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808.

The authorities are to the effect that, when considering the general charge requested and refused, the question of the weight of evidence is not before the Supreme Court, in the absence of a motion for new trial predicated thereon. The question to be considered is whether or not the evidence, or a reasonable inference therefrom, was sufficient to warrant the submission of the facts to the jury, under the pleading. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

It was for the jury to decide without affirmative instruction whether the tendencies of the testimony of the witness Miss Gosa conflicted with the testimony of Mr. Orr, and whether in any part of the testimony there was such conflict, and if so, the effect thereof is for the jury. The charges to the effect of withdrawing such issues from the jury were properly refused. Massey v. Reynolds, 213 Ala. 178, 104 So. 494; Stuck v. Howard, 213 Ala. 184, 104 So. 500; 28 R.C.L. 372.

At the conclusion of all the testimony, the court, with the consent of defendants, gave charges 12, 14, 44 and 45, for the

---

[1] Ante, p. 392.

proponent. Charge 36 was also given at the request of the plaintiff.

Charges 37 to 42, inclusive, usurp the power of the jury, being affirmative in nature, and were properly refused.

Assignments of error based on charges affirmative in effect are illustrated by charges A and B. If the jury had the right to find that the will was not duly and legally executed, then it follows that such charges were properly refused, as the said charges do not present for separation and decision, the sufficiency of the evidence to sustain the grounds of contest,—due execution and undue influence. That is to say, the charges do not properly separate the two issues of undue influence and due execution, and as the evidence afforded a reasonable inference of a conflict in testimony on these separate issues, the charges were properly refused.

In view of Mr. Orr's testimony that testator told him he had never written a previous will; the production and introduction in evidence of several former wills in the handwriting of, and executed by Mr. Street; the proof of the existence and execution of the 1938 or 1939 will, which proponent is shown to know about, but failed to produce on due notice; Mr. Orr's statement to Mr. Street referred to above; the instant will containing expression that Mrs. Street, "knows nothing of this bequest and has never mentioned the same to me" (second paragraph of the instant will); the inconsistent statement that Mr. Street told Mr. Orr that Mrs. Street would take care of the distribution of his library to his children, and the adverse inferences reasonably to be drawn from the letters of Mrs. Street to testator,—material conflict was presented in the evidence. It was for the jury to decide whether or not the will was duly and legally executed, and justified the refusal of the affirmative instructions duly requested, including charge 50.

The voluminous record makes a case for the jury. Mrs. Street's second call for Mr. Orr to come at once was in response to the husband's request. Mrs. Street's conversation with Mr. O. D. Street, Jr., after Mr. Orr came and direction vel non not to go into the father's room, that "they were making a will"; testator's conversations with Mr. Joe Johnson about his vexing situation as to his family and the coercion or undue influence

in the execution of the last will, excluding his children by his first wife; Mrs. Street's failure to produce, after due notice, the will made in 1938 or 1939 by testator, making a natural disposition of his property; her conversation with Mrs. Wilson to the effect that she knew the contents of that will and it would "never be found"; the many expressions in letters to the husband urging him to do more for her; the testimony of Judge Kennamer showing a change in testator's political and social efforts and associations, and his opinion that proponent largely dominated testator presented a question for the jury, under the grounds of contest on which trial was had. Fulks v. Green, ante, p. 392, 20 So.2d 787.

It results from the foregoing that, under the pleading in the circuit court and the evidence touching the same, the verdict of the jury upon which judgment was entered should not be disturbed, and it is hereby affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.