The defendants appeal from a judgment for the plaintiff in an ejectment action. We affirm.
This was the second of two trials over a portion of a lot of land located in Faunsdale. After a jury verdict in favor of the defendant in the first trial, a motion for a new trial was granted, and that second trial resulted in a verdict for the plaintiff.
The appellants' statement of the issues, and their argument as well, present only one question: Whether the weight of the evidence supports the jury's verdict for the plaintiff. In response to this issue the plaintiff, in brief and by motion, has pointed out the defendants' failure to file a motion for a new trial making the weight of the evidence a ground thereof. In the absence of such a motion, the defendants maintain, this Court will not pass on the weight of the evidence.
Our decisions are in accord with that principle. The reason for this position, expressed by Coleman, J. in Porter v.Alabama Farm Bureau Mutual Cas. Ins. Co., 279 Ala. 499,187 So.2d 254 (1966), distinguishes the role of a reviewing courtvis-a-vis the motion with that of the trial court:
 It is apparent, however, that such a motion for new trial is necessary in order to obtain, for the first time, a ruling, by the trial court, on the weight of the evidence. It seems that the purpose of the motion is not to afford the trial court a second opportunity to rule on the same question, but to obtain a ruling by the trial court on the weight of the evidence. The jury has already judged the weight of the evidence, but the trial court has not ruled on the weight of the evidence. In the absence of a ruling by the trial court, there is no ruling of which the appellant may complain. The motion for a new trial is necessary to obtain such a ruling.
There having been no such ruling, the scintilla of evidence rule applies to the case, and thus the only issue before us is whether there was evidence raising a reasonable inference in support of the plaintiff's position (appellee here) warranting submission of the facts to the jury. Street v. Street, 246 Ala. 683, 22 So.2d 35 (1945); Orman v. Scharnagel, 210 Ala. 381,98 So. 123 (1923).
The dispute involved the legal title to Lot 13 of Selden Subdivision. The defendants claimed title to all of the lot, while the plaintiff claimed title to a southerly portion. The plaintiff introduced a map of the Selden Subdivision showing the name of one Willie Cunningham on Lot 13. The plaintiff proved a chain of title beginning with a probate court order (which included the map) of October 11, 1909 deeding the south portion of Lot 13 to Cunningham. This deed was followed by a deed dated March 8, 1913 from Cunningham to Mary M. Wilkins conveying a portion of Lot 13: *Page 155 
 Beginning at the SW corner of the Demopolis Road and Cunningham Avenue, thence Westwardly along the North line of the Demopolis Road, 90 feet to the East line of Mrs. Bessie S. Peacock's property, thence Northwardly along the East line of Mrs. Peacock's property to the South line of Grant Estrage's property, thence Eastwardly along the South line of Grant Estrage's property 90 feet, to the West line of Cunningham Avenue, thence Southwardly along the West line of Cunningham Avenue to the point of beginning. . . . (emphasis added)
This description, compared with the subdivision map, obviously describes land in the southern portion of Lot 13. The final deed in this chain was dated September 2, 1960, named Bruce M. Westbrook as grantee, and described the property as:
 That certain lot in Faunsdale, Alabama, Marengo County. Bounded on South by U.S. 80 on the East by an alley on West by Mr. Will Aikens and on the North by Lou and Arthur Woods.
An expert witness testified that Lot 13 was a one-acre lot comprising 43,560 feet. Another plaintiff's witness, Ben Wilkins, an elderly man, testified that his sister had owned the portion at one time, and that it was in the possession of the Wilkins (two of plaintiff's predecessors) and Westbrooks "as long as he could remember." He added that a fence divided it from the defendants' property which lay north of that in question. This fence was two-thirds of the way up the lot, was erected by his father, and was there as long as he could remember. It was not taken down until two years before. This witness also testified that he paid the taxes for his mother and sister, the previous owners, for fifty years until 1960, when the plaintiff began assessing it.
Sam Westbrook, plaintiff's father, testified to the existence of a fence dividing the Wilkins' portion of the lot from that the Woods lived on. The fence had been there for as long as he could remember (he was born in Faunsdale in 1912 and raised there) until it was taken down in 1974. At one time, he testified, the defendants requested him to ask his son to sell the property in question to them.
Another witness, Frank McCrary, testified that since 1923 he had lived to the east of where the Woods live and that a fence divided Lot 13 about two-thirds of the way up, with the Woods living north of the fence. With permission of the Wilkins and the Westbrooks, he had pastured his cows on the south portion of Lot 13 without any knowledge of the defendants disputing the ownership of that portion.
This evidence was disputed by that of the defendants who also established a chain of title, but that chain disclosed some flaws, notably at its beginning. It disclosed that on March 11, 1911, Willie Cunningham, plaintiff's predecessor, had conveyed by deed a portion of Lot 13 to Grant Estrich, and on November 28, 1913, Willie Cunningham had conveyed by another deed aportion of Lot 13 to the same Grant Estrich. The descriptions contained in these conveyances were plotted in open court by the expert witness, Camp. He explained that the descriptions began at a point measured from the northeast corner of Lot 13 and conveyed a lot 228 feet north and south, and 90 feet east and west. This evidence was significant because with plaintiff's other evidence it supported the conclusion that the defendants' predecessor had obtained title to the north portion of Lot 13 while plaintiff's predecessor had obtained title to the south portion.
Other conveyances introduced by the defendants included:
 (a) A mortgage dated December 15, 1933 from Estrich to J.W. McDonald conveying all of Lot 13;
 (b) A foreclosure deed dated December 29, 1939 to J.W. McDonald as grantee of all of Lot 13;
 (c) A deed dated January 6, 1944 from J.W. McDonald to Arthur and Lou Woods conveying (all of) Lot 13;
 (d) A mortgage dated January 6, 1944 to J.W. McDonald from Arthur and Lou Woods on (all of) Lot 13;
 (e) A mortgage dated December 3, 1951 to John W. Drinkard from Arthur and Lula Woods on (all of) Lot 13; *Page 156 
 (f) A foreclosure deed dated July 2, 1953 to John W. Drinkard as grantee of (all of) Lot 13;
 (g) A warranty deed dated September 11, 1962 from John W. Drinkard to Arthur Woods and Lula Woods as grantees of (all of) Lot 13.
This evidence was supported by Arthur Woods who testified that he had used all of Lot 13 as his own from 1944 to the present and had been paying taxes on all of Lot 13 since 1944.
As we have stated, the evidence of title, by record and by adverse possession, was disputed. We have recited its salient features not only to manifest this dispute but also to exhibit the evidence of the plaintiff-appellee which justified the trial court in submitting the case to the jury. Their verdict for the plaintiff having been supported by the existence of at least a reasonable inference of title in the plaintiff, it cannot be disturbed on appeal.
The judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.