Defendant, Unionmutual Stock Life Insurance Company of America, appeals from an adverse jury verdict and judgment rendered by the Circuit Court of Montgomery County. We affirm.
Plaintiff-insured, Eugene L. Wilkerson, Jr., filed an action against insurer claiming benefits due under a group long-term disability policy made available through plaintiff's employer, Mendel Distributing Company. Plaintiff died during the pendency of the suit, and his wife, Vickie S. Wilkerson, as executrix of his estate, filed a motion to revive the action. This motion was never ruled on, but defendant declined to raise this issue at trial or on appeal.
Defendant's motion for summary judgment in this cause was denied. Defendant's motions for directed verdict at the close of plaintiff's evidence, and all evidence, were also denied. The jury returned a verdict for plaintiff in the amount of $2,300.85 upon which judgment was entered. Defendant did not file a motion for new trial.
Defendant's principal contentions on appeal are (1) that the trial court erred in not granting defendant's motion for directed verdict because there was no evidence to support a verdict for plaintiff, and (2) that the judgment and verdict are contrary to the great weight and preponderance of the evidence. However, our case law makes it clear that our review in this case is limited to the former contention, and that defendant is precluded from raising on appeal the issue of the weight of the evidence.
It is settled in Alabama that in the absence of a motion for new trial the question of the weight or sufficiency of the evidence is not before this court for review where there has been a jury trial in the court below. State Farm Mut. Auto.Ins. Co. v. Key, 46 Ala. App. 303, 241 So.2d 332 (1970), and cases cited therein. The question to be considered is whether the evidence, or a reasonable inference therefrom, was sufficient to warrant the submission of the facts to the jury under the pleadings. Street v. Street, 246 Ala. 683,22 So.2d 35 (1945).
In reviewing the refusal of affirmative instruction to defendant, the court must review the evidence in a light most favorable to plaintiff and affirm the trial court's action if there is a scintilla to support the complaint. Ramos v. Fell,272 Ala. 53, 128 So.2d 481 (1961). See also Mixon v. Whitman,279 Ala. 249, 184 So.2d 332 (1966). We review this case with the foregoing principles in mind.
The insured, Eugene Wilkerson, was employed by Mendel Distributing Company. He had disability insurance through his employer's group long-term disability insurer, Pilot Life Insurance Company. On October 21, 1976 Mendel Distributing Company sent out letters to its employees advising them of an anticipated change in coverage from Pilot Life to defendant Unionmutual. The letter stated in pertinent part:
 The only potential problem is that under the new program an employee would not be covered during the first year if he has received treatment for a medical condition during the three months prior to the effective date of the policy, which we presume would be November 1, 1976. . . . *Page 966 
[I]f you are being treated for a condition which could cause total disability, you can write me a confidential memo about this. [Emphasis theirs.]
Wilkerson made application for coverage with defendant on November 15, 1976. Question Three in the application asked, "Are you now in good health and free from physical impairment, sickness or disease to the best of your knowledge and belief?" Plaintiff checked the "Yes" block in answer to this question. Question Four asked the applicant to list "the injuries, sicknesses, diseases, disorders and operations which you have had within the last 5 years, dates and names of physicians consulted." Wilkerson checked the "None" box in answer to this question. These questions are followed by the statement, "I agree that the statements contained herein are true and complete and shall form the basis for and constitute a part of the policy under which any certificate of insurance shall be issued." Wilkerson's signature appears at the bottom of the application.
About a month later, on December 16, 1976, Wilkerson saw a physician, Dr. Mracek, who referred him to a surgeon. Wilkerson's surgeon, Dr. Dorrough, examined him on December 20th and scheduled him for a biopsy to determine the nature of two knots which had appeared on Wilkerson's neck in March of 1975. The biopsy revealed that he had a form of thyroid cancer, for which he underwent surgery on January 6, 1977.
In March 1977 Wilkerson applied for disability benefits under the Unionmutual policy. In July 1977 defendant's letter informed Wilkerson that his claim was being disallowed and his coverage voided. Relevant portions of that letter read as follows:
Dear Mr. Wilkerson:
 As you are probably aware, we recently completed our files with additional medical information which now clearly indicates you did not give us full and complete medical history at the time you completed the medical questionnaire on November 15, 1976.
 I am enclosing a photostat of the medical questionnaire and as you will note, you did not include any medical history and, in fact, replied in the negative that you were never seen for any injuries, sicknesses, diseases or disorders in the last five years.
 Our recent investigation reveals the fact that you saw Dr. Richard E. Brown on reference from Dr. Harvey Farrior on April 10, 1973. At that time, you were diagnosed as having early posterior subcapsular cataracts, and you were advised of this condition. Dr. Brown followed you up six months later on October 8, 1973 to determine whether or not there were any changes in your eyesight and you were advised to return when your vision became worse.
 In addition, you were seen by Dr. Walter H. Pugh on two occasions in 1975 for various complaints and these visits were not included on your application.
 It is important for you to understand that our Underwriters must be provided with complete medical history in order to properly assess a risk at the time of application. In this case, they were not given the opportunity to review your medical history since you omitted this information, and had they known of your cataract disorder, they would not have issued this coverage to you in any form.
 Under the circumstances, we have no choice but to refund the premiums paid for your coverage from the date of issue. This action places all parties concerned in the position as though the policy had never been applied for or issued and the Certificate to you is void. [Emphasis supplied.]
Wilkerson filed an action to recover the benefits denied him, but in November 1977, while the suit was pending, he died of thyroid cancer at the approximate age of thirty-nine years. His executrix prosecuted this action.
Defendant's answer to the complaint in this cause raised several affirmative defenses which, in essence, asserted that coverage under the disability insurance policy had *Page 967 
been extended to Wilkerson on the basis of misrepresentations made in his insurance application. Specifically, defendant contended that contrary to the answers given by Wilkerson, he was not in good health nor free from physical impairment, sickness or disease to the best of his knowledge and belief, and that he had been treated by several physicians within the preceding five years; therefore defendant was entitled to rescind and void the policy.
Defendant argues that this case is controlled by Code of Alabama 1975, § 27-14-7, which reads in pertinent part:
 (a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(1) Fraudulent;
 (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
Defendant does not contend on appeal that the misrepresentations in the application for insurance were fraudulently made. It does contend, however, that Wilkerson's misrepresentations in the application were material and increased the risk accepted by the insurer, and that, had it known Wilkerson's true medical condition on the date of his application, it never would have issued a policy to him.
Unionmutual cites New York Life Insurance Co. v. Horton,235 Ala. 626, 180 So. 277 (1938) for the proposition that the misrepresentation by the insured that he had not consulted a physician had the effect to increase the risk of loss. For reasons we shall discuss later in this opinion, we are not persuaded that this statement from Horton is controlling in this case. Rather, we think the general rule of law applicable to the case at bar is to be drawn by analogy to earlier cases decided by the Alabama Supreme Court involving life insurance policies. In those cases the court said that representations in applications for life insurance touching consultation with or treatment by a physician stand on the same footing as representations of good health. It must appear they relate to some serious ailment material to the question of life expectancy. Sovereign Camp, W.O.W. v. Moore, 237 Ala. 156,186 So. 123 (1939); see also New York Life Insurance Co. v. Zivitz,243 Ala. 379, 10 So.2d 276 (1942). Similarly, we think that in order for Unionmutual to avoid liability on the insurance policy, it must appear that the misrepresentations relate to some serious ailment material to the question of the potential disability of the insured.
Much of the evidence supporting the affirmative defenses raised by Unionmutual was supplied by Wilkerson's deposition, portions of which were read into evidence. Wilkerson stated that at the time he filled out the application he knew he had cataracts, he knew he had severe periodic pain in his left arm, and he knew he had two knots in or about his neck. Although Wilkerson did not know it at the time of application, these knots later proved to be symptoms of a form of thyroid cancer.
Wilkerson's statements tended to show that within the five years preceding the application he had been examined by doctors on numerous occasions; at least four times by one doctor, twice by another, and once by each of three other doctors. The last of these examinations occurred approximately five months prior to the time he applied for coverage with defendant. *Page 968 
Plaintiff testified that sometime during 1973 he had awakened with a tiny round red spot on his left eye. He consulted Dr. Farrior, who suspected the problem might be initial symptoms of cataracts and who suggested that a second opinion be obtained from Dr. Brown, an ophthalmologist. After an initial eye examination and a follow-up examination six months later, Dr. Brown indicated to plaintiff that the cataracts were the type that would not give him trouble for twenty to thirty years, and that plaintiff need not return for further treatment unless he starting having trouble. Dr. Brown testified in deposition that the odds were 99-to-1 that plaintiff's cataracts were "hereditary cataracts" (also referred to as "congenital cataracts") which could have been present since birth without interfering with plaintiff's 20/20 vision.
Plaintiff further testified that during a routine physical examination in 1975 he pointed out the two knots on his neck to Dr. Pugh. Dr. Pugh administered a blood test to determine if the knots might be a symptom of Hodgkin's disease, but the test proved negative. Plaintiff again visited Dr. Pugh in December 1975 for treatment of the pain in his left arm and received muscle relaxants for this condition. The pain continued, however, and plaintiff consulted Dr. Mracek, a heart specialist, for the same problem in June 1976. Dr. Mracek administered an electrocardiogram which revealed no heart trouble. When plaintiff again pointed out the knots on his neck, this time to Dr. Mracek, an x-ray of plaintiff's upper chest and neck was taken. Dr. Mracek indicated to plaintiff that the knots might be a "cervical rib" (bone spur), but did not recommend any further treatment for the knots.
Defendant's second vice-president and regional underwriting manager, Dean N. Valentgas, testified that as a rule Unionmutual will not provide group disability coverage of the type here involved for any employee who has cataracts; that Unionmutual issued the policy to plaintiff in reliance on the statements made in the application; and that Unionmutual would not have undertaken to insure Wilkerson if it had known he had cataracts, nor would Unionmutual have insured him if it had known he had lumps on his neck and was having intermittent pain in his arm.
Evidence adduced on behalf of plaintiff tended to show that at the time of application, Wilkerson was "in good health as far as he knew." He answered questions three and four in the application in the above-indicated manner because none of the doctors he had consulted up to the time of application had indicated that anything was wrong with him.
Wilkerson testified that if he had suspected he had any serious medical problems at the time he applied for coverage with defendant, he would "definitely have written [his] boss back and told him don't change any of your insurance because I have got something seriously wrong with me."
Wilkerson further testified that the first doctor to indicate that the knots on his neck presented a serious medical problem was his surgeon, Dr. Dorrough, who examined him approximately one month after he applied for insurance with defendant. The two or three doctors who had previously examined the knots on his neck had told him "not to worry" about them, or that the knots might be "cervical ribs" (bone spurs). None of these doctors had indicated the knots were a serious medical problem, nor had they recommended further treatment. Likewise, Wilkerson had no cause for apprehension about the pain in his arm. He had received muscle relaxants for this condition, but no doctor had recommended further treatment.
Plaintiff's widow and executrix of his estate testified that Wilkerson had missed very little time from work because of illness in the five years preceding his death.
In construing the statutory predecessor to Code of Alabama 1975, § 27-14-7 (formerly Title 28, § 6, Code of Alabama, 1940), the Alabama Supreme Court said in Bankers Life Casualty Co. v. Long, Ala., 345 So.2d 1321 (1977):
 The rule in Alabama is that to defeat an insurance policy on the ground of misrepresentations *Page 969 
in the application it must appear: (1) the misrepresentations were false, (2) . . . the matter misrepresented increased the risk of loss and (3) the insurer relied on them to its prejudice. [Citation omitted.]
We think the statute as currently worded embodies these same principles.
The case cited by defendant, New York Life Insurance Co. v.Horton, 235 Ala. 626, 180 So, 277 (1938), involved misrepresentations in an application for reinstatement of a life insurance policy. That application contained questions similar to the Questions Three and Four involved in this case. However, the misrepresentations in Horton were made at a time one month after two physicians had determined that Horton was afflicted with a fatal malady, Hodgkin's disease, and after
Horton had been advised by his physician that he needed further medical treatment. The court's statement — that Horton's misrepresentation that he had not consulted a physician had the effect to increase the risk of loss — was made after the court had concluded as a matter of law that Horton was afflicted with a disease which materially increased the risk of loss when he filed his application for reinstatement of the policy.
In the present case, however, it appears from defendant's letter to Wilkerson that the insurer's denial of coverage was based on insured's failure to state in his application that he had been treated by two doctors for cataracts and had been seen by Dr. Pugh on two occasions in 1975. Hence, the questions presented in this case are (1) whether the misrepresentations concerning insured's state of health at the time of application for coverage and his history of medical treatment up to that time were material to the risk of loss assumed by Unionmutual in insuring Wilkerson against disability, New York LifeInsurance Co. v. Hoffman, 238 Ala. 648, 193 So. 104 (1939); NewYork Life Insurance Co. v. Zivitz, supra; and (2) whether Unionmutual relied upon the misrepresentations to its prejudice (or, stated differently as in § 27-14-7, whether, the insurer would in good faith have not issued the policy). Bankers Life Casualty Co. v. Long, supra.
The opinion of the Alabama Supreme Court in Sovereign Camp,W.O.W. v. Moore, supra, (a case involving misrepresentations in an application for life insurance) states that the risk of loss is increased if the matter misrepresented be so material to the question of life expectancy that an insurer may have reasonably declined to accept the risk if the truth had been revealed. That opinion further states:
 As held in several cases some diseases are so serious as affecting the applicant as an insurance risk that, as matter of law, they are held to increase the risk of loss. Other ailments are so passing and temporary that they could not be material, and, as matter of law, not the basis of a defense of misrepresentation . . .
 The disease disclosed by the foregoing evidence [hysteria-neurosis, an imbalance of the nervous system] cannot, as matter of law, be assigned to either of these classes.
 Whether this disease increased the risk of loss was a jury question.
We think these same general principles are controlling within the context of this case involving a suit on a disability policy.
The record in this case indicates that, had Wilkerson responded truthfully and fully to Question Four of the application, Unionmutual would have been apprised of the following facts concerning Wilkerson's medical history: that he had visited Dr. Pugh several times for routine physical examinations; that the cataracts diagnosed by Dr. Farrior and Dr. Brown were almost certainly the kind that would not require any treatment unless they started troubling him and such trouble was not expected until twenty or thirty years later; that after consulting Dr. Pugh and Dr. Mracek for treatment of the pain in his arm he had been prescribed muscle relaxants but had not been advised to seek further treatment; and that the two knots on his neck had been determined not to be symptoms of Hodgkin's disease by one doctor, had been x-rayed and diagnosed as a possible "cervical rib" (bone spur) by *Page 970 
another doctor, with neither doctor recommending further treatment.
Unlike the court in the Horton case, supra, we are not prepared to hold that, as a matter of law, the misrepresentations in this case materially increased the risk of loss assumed by Unionmutual. The record reveals a conflict in the testimony as to the materiality of the insured's misrepresentations concerning his cataracts, the pain in his arm, and the knots in his neck. The testimony of Mr. Valentgas was to the effect that Unionmutual would have automatically excluded Wilkerson from coverage if it had known of the presence of any one or all of these ailments. On the other hand, Dr. Brown testified that he did not think Wilkerson's cataracts were "of any significance" and that if he had, he would have advised further treatment. Wilkerson testified that at the time he applied for coverage no doctor had diagnosed either the knots or the arm pain as indicating any serious medical problem, nor had any doctor advised him to seek further treatment for these conditions. We think the jury was properly allowed to resolve this conflict in testimony.
Moreover, we think the trial court correctly submitted to the jury the issue of whether Unionmutual in good faith would not have extended coverage to the insured if it had been aware of the facts regarding the insured's health at the time he applied for coverage.
In view of the presence of these jury questions we cannot say that the trial court erred in denying Unionmutual's motion for directed verdict. New York Life Insurance Co. v. Hoffman,238 Ala. 648, 193 So. 104 (1939); National Security Insurance Co.of Elba v. Tellis, 39 Ala. App. 455, 104 So.2d 483, cert. den.267 Ala. 696, 104 So.2d 488 (1958). As discussed earlier in this opinion, Unionmutual's failure to move for a new trial precludes any review of the question of the weight or sufficiency of the evidence. See New York Life Insurance Co. v.Zivitz, supra, and General Accident, Fire Life AssuranceCorp. v. Jordan, 230 Ala. 407, 161 So. 240 (1935), (cases involving misrepresentations in applications for insurance). In each of these cases the court concludes that although there was sufficient evidence to submit the case to the jury, the verdict for the insured was subject to review on the question of the weight of evidence upon insurer's motion for new trial.
This judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
 On Rehearing
In its original brief and in the brief filed in support of its application for rehearing Unionmutual relies, inter alia, on Liberty National Life Insurance Co. v. Trammell, 35 Ala. App. 300, 51 So.2d 167 (1949), cert. den. 255 Ala. 236, 51 So.2d 176
(1951) wherein the opinion states:
 "Cancer is a disease which the courts judicially know increases the risk of loss and if existing at the time of the issuance of a policy containing a warranty as to sound health per se breaches such warranty." [Emphasis supplied.]
The policy involved in the Trammell case contained a clause setting the effective date of the policy as the date of issue provided the insured is then alive and in sound health. TheTrammell opinion notes that such a clause, under the then-governing statute, is a warranty. Under the present statute, Code of Alabama 1975, § 27-14-7 (and as provided for in Wilkerson's policy with Unionmutual), such a clause is a representation and not a warranty. More importantly, no such "good health delivery clause" appears in the policy involved in the case at bar.
OPINION EXTENDED.
APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 971