460 S.E.2d 719

**MASSACHUSETTS MUTUAL LIFE IN-
SURANCE COMPANY, A Foreign
Corporation, Plaintiff,**

v.

**Sherry Lee THOMPSON, Defendant.**

**No. 22519.**

Supreme Court of Appeals of
West Virginia.

Submitted May 3, 1995.

Decided July 13, 1995.

 

Herbert G. Underwood, Cynthia R. Cokeley, Steptoe & Johnson, Charleston, for plaintiff.

Gregory E. Elliott, Charleston, for defendant.

WORKMAN, Justice:

This case is before the Court upon the following certified questions posed by the September 14, 1994, order of the United States District Court for the Southern District of West Virginia:

(a) Under a disability insurance policy, does West Virginia Code § 33–6–7(b) or (c), either one, require that an insurer prove the subjective element that an insured specifically intended to place misrepresentations, omissions, concealments of fact, or incorrect statements on an application in order for the insurer to avoid the policy?

(b) Under a disability insurance policy, does West Virginia Code § 33–6–7(b) or (c), either one, require that the misrepresentation, omission, concealment of fact, or incorrect statement be materially related to the ultimate disability for which the insured is claiming coverage in order for the insurer to avoid the policy or does the misrepresentation, omission, concealment of fact or incorrect statement need only materially related to the insurer's decision of whether to issue the policy?

## I.

On March 4, 1992, Sherry Thompson completed and signed a Massachusetts Mutual

Life Insurance Company (hereinafter "Mass Mutual") application for both disability insurance and business overhead expense insurance. The disability insurance policy was to provide for monthly benefits of up to $880 per month for a period of sixty months and a contingent monthly income rider which was attached to said policy that was to provide for monthly benefits of $950 per month for the same length of time. The business overhead expense policy was to provide for monthly benefits of up to $1000 per month for a period of twenty-four months.

The application for these insurance policies required Ms. Thompson to provide information concerning her medical history including whether she had "ever been advised of, treated for, or had any known indication of: ... Nervous Disorder ... Mental Disorder" to which Ms. Thompson responded by checking the box indicating "None of These[.]" The application further required Ms. Thompson to respond to the following question: *"Other than previously stated in this application,* within the last five years have you:

a. Had any mental or physical disorder?

b. Had a consultation, surgery, or injury requiring treatment by a physician, hospital or other medical facility?

. . . .

e. Been, or are you currently, under treatment or taking any medication?"

Again, Ms. Thompson responded to each of these questions in the negative.

On March 15, 1992, approximately eleven days after completing her original application, Ms. Thompson signed a "CONDITIONAL RECEIPT"[1] which contained the following language:

**BEFORE ANY INSURANCE BECOMES EFFECTIVE, ALL OF THE FOLLOWING CONDITIONS MUST BE MET:**

. . . .

4. On the date of this receipt, all answers and statements in any part of the

INSURANCE UNDER THE POLICY (OR REINSTATEMENT) APPLIED FOR WILL BECOME EFFECTIVE IF ALL REQUIRED CONDITIONS ARE MET."

---

**1.** According to the language of the "conditional receipt" the purpose of said receipt is as follows: "IMPORTANT: THIS RECEIPT DOES NOT CREATE ANY TEMPORARY OR INTERIM INSURANCE. IT SETS THE DATE WHEN THE

application having an earlier date are complete and true as though given on the date of this receipt.

**If any of these conditions is not met, the insurance shall not become effective. Then, this receipt will terminate and our only liability will be to return the payment made.**

Thus, Ms. Thompson's signature on this form indicates that the information she had provided to Mass Mutual in her application for the two different insurance policies was complete and true. Mass Mutual agreed to provide the requested insurance coverage.

On or about October 22, 1992, Ms. Thompson submitted to Mass Mutual a claim for disability income insurance benefits under Policy No. 9–460–349 and business overhead expense benefits under Policy No. 6–460–352 because she suffered from carpal tunnel syndrome in her hands. Both parties recognize that this condition is wholly unrelated to the information Ms. Thompson provided Mass Mutual concerning previous treatment which the insurer now claims was inaccurate. Further, there is currently no alleged omission or misrepresentation at issue as to whether Ms. Thompson ever received treatment or had been advised of carpal tunnel syndrome prior to completing her application with Mass Mutual.[2]

Following Ms. Thompson's claim for disability benefits, Mass Mutual learned that representations in Ms. Thompson's application were not totally correct. Specifically, Ms. Thompson had met with a psychologist, Ann Pauley, Ph.D., on March 11, 1992, to seek Dr. Pauley's counselling services for relationship difficulties. Additionally, Ms. Thompson had seen a psychiatrist, Edmund Settle, Jr., M.D., on April 26, 1989, and May 10, 1989. Dr. Settle treated Ms. Thompson

for bipolar disorder and had prescribed medication for her. Thus, Ms. Thompson's representations could be characterized as not completely accurate.

In an affidavit dated August 4, 1993, Ms. Thompson stated that she did not believe that she had ever been treated for or suffered from a mental or nervous disorder. Further, she indicated that she did not believe that she had had a consultation or injury requiring treatment by a physician. She stated that in her application, she had innocently omitted the fact that she had previously seen Dr. Settle for premenstrual syndrome, because she had broken up with her boyfriend, and the fact that he had prescribed medication.[3] Finally, Ms. Thompson indicated that "when signing the conditional receipt on March 15, 1992, it did not dawn on me that I had sought counseling on March 11, 1992, because I was upset after breaking up with my boyfriend."

Mass Mutual instituted action[4] in federal district court for recision of the insurance contracts and/or declaratory judgment, contending that it would not have issued the insurance policies to Ms. Thompson had it known all the facts concerning Ms. Thompson's medical history. Moreover, Mass Mutual alleges that the policies are void under West Virginia Code § 33–6–7 (1992) because of material misrepresentations made by Ms. Thompson in both her application for insurance and the conditional receipt. Accordingly, Mass Mutual argues that Ms. Thompson is not entitled to recover any benefits for her carpal tunnel syndrome claim.

## FIRST CERTIFIED QUESTION

The first certified question concerns whether an insurer has to prove the insured specifically intended to make misrepresenta-

---

2. The parties are now engaged in discovery to determine whether other physicians have seen Ms. Thompson and prescribed medications for her within the five-year period preceding her completion of the application, which would also relate to the truthfulness of her answers to questions posed by the application.

3. She acknowledged the Dr. Settle had prescribed "some medicine, which I took one time and got sick and never took again."

4. Both the disability insurance policy and the business overhead expense policy provide that Mass Mutual "can contest the validity of this policy, or any riders or benefits, for any material misrepresentation of a fact," as long as the misrepresentation was in the application for the policy, rider or benefit. Further, under this provision, Mass Mutual "must bring legal action to contest the validity of this policy within two years from its Issue Date."

tions[5] in filling out an application for disability insurance in order for the insurer to void the policy. The Plaintiff, Mass Mutual, argues that this Court's decision in *Powell v. Time Insurance Co.*, 181 W.Va. 289, 382 S.E.2d 342 (1989), makes it clear that if the insurer proceeds under West Virginia Code § 33-6-7(a), then the insured's intent to deceive the insurer is clearly an element which the insurer must prove. *See* 181 W.Va. at 291, 382 S.E.2d at 344, Syl. Pt. 4. However, the Plaintiff argues that where the insurer proceeds under subsections b and c of West Virginia Code § 33-6-7, there is no reference to the insurer having to prove the element of intent. Thus, the Plaintiff asserts that under the statute, all that it is required to prove is that the insured provided incorrect information which was material to the insurer's decision to assume the risk of whether to issue the policy. *See* 181 W.Va. at 291, 382 S.E.2d at 344, Syl. Pt. 5. In contrast, the Defendant argues that the insurer must prove the element of intent under any of the subsections of West Virginia Code § 33-6-7. Further, the Defendant argues that she in no way intentionally misrepresented any information in her application.

It is necessary first to examine the provisions of West Virginia Code § 33-6-7:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made

known to the insurer as required either by the application for the policy or otherwise.

We interpreted this statute in *Powell* where the plaintiff sought life insurance proceeds upon the death of the insured. The insurer denied coverage on the basis that the insured misrepresented that he had been treated for any respiratory disorder in the application for the insurance. 181 W.Va. at 291, 382 S.E.2d at 344. Two months after the policy was issued, the insured died of carcinoma of the lung, with pulmonary emphysema listed as "an unrelated condition contributing to death." *Id.* at 292, 382 S.E.2d at 345. The insurer asserted that its insured misrepresented facts in his application and refused to honor the policy. The insurer refunded the premiums paid by its insured to the plaintiff. *Id.* At trial, there was an abundance of evidence that the insured had seen various physicians for his breathing condition. Further, the manager of the insurer's underwriting department testified that had the insured accurately represented his medical condition, it would have triggered further investigation by the insurer prior to approving the application. Moreover, the manager testified that the diagnosis of emphysema made the insured uninsurable and had the insurer known about his long history of pulmonary disease, it would not have issued the policy. *Id.* at 293, 382 S.E.2d at 345-46.

■ In affirming a directed verdict in favor of the insured, we thoroughly analyzed the provisions of West Virginia Code § 33-6-7 (hereinafter also referred to as "§ 33-6-7"). We stated that "[i]t is apparent that the legislature, in enacting W.Va.Code § 33-6-7, intended to codify the circumstances in which an insurance policy could be revoked for misrepresentations made in the application." 181 W.Va. at 295, 382 S.E.2d at 348. We also noted that the statutory provision was intended "to alleviate the harshness of the common law and is to be liberally construed in favor of the insured." *Id.* at 290, 382 S.E.2d at 343, Syl. Pt. 2, in part.

---

5. For the purposes of this opinion, the use of the term "misrepresentation" also encompasses the "omissions, concealments of facts, and incorrect statements" language contained within West Virginia Code § 33-6-7.

■ We then discussed each of the three separate subsections found within § 33–6–7 for which an insurer may void a policy based on an insured's misrepresentation. First, we held in syllabus point four that in order to prove that an insured fraudulently misrepresented facts pursuant to subsection a of § 33–6–7, the "misrepresentations, omissions, concealments of facts, and incorrect statements on an application for insurance by an insured *must be knowingly made with an intent to deceive the insurer* and relate to material facts affecting the policy." 181 W.Va. at 291, 382 S.E.2d at 344 (emphasis added). Thus, for an insurer to prevail under § 33–6–7(a), the insurer must establish the insured's specific intent to deceive the insurer.

However, in examining subsections b and c of § 33–6–7, our focus shifted from the insured's culpability to the impact the misrepresentation would have on the insurer's business judgment utilized in issuing the policy. Specifically, we found that under subsection b or c of § 33–6–7, the insurer must establish that the misrepresentation was material to the issuance of the policy, stating that:

> in order for a misrepresentation in an insurance application to be material, it must relate to either the acceptance of the risk insured or to the hazard assumed by the insurer. Materiality is determined by whether the insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

181 W.Va. at 297, 382 S.E.2d at 350 and Syl. Pt. 5. Moreover, we held in syllabus point six that "W.Va.Code, 33–6–7 (1957), adopts the test of whether a reasonably prudent insurer would consider a misrepresentation material to the contract." 181 W.Va. at 291, 382 S.E.2d at 344. Finally, "[w]here an insurer seeks to avoid a policy based on a

material misrepresentation, this assertion is in the nature of an affirmative defense which the insurer must prove by a preponderance of the evidence." *Id.*, Syl. Pt. 7.

Accordingly, pursuant to our decision in *Powell*, it is evident that under a disability insurance policy, neither West Virginia Code § 33–6–7(b) nor (c) requires that an insurer prove the subjective element that an insured specifically intended to place misrepresentations, omissions, concealments of fact, or incorrect statements on an application in order for the insurer to avoid the policy. Since, in the present case, the Plaintiff is proceeding under West Virginia Code § 33–6–7(b) and/or (c), there is no need for the Plaintiff to establish the element of intent.

## SECOND CERTIFIED QUESTION

■ The next certified question involves an issue of first impression and centers upon whether West Virginia Code § 33–6–7(b) or (c) requires that an insurer must establish that the misrepresentation is materially related to the ultimate disability for which the insured is claiming coverage in order for the insurer to avoid the policy. The Plaintiff argues that a careful reading of the statute and the *Powell* decision indicates that the element of materiality requires only that the insurer prove that the misrepresentation materially related to the insurer's decision of whether to issue the policy. In contrast, the Defendant asserts that the element of materiality requires that the insurer prove that the misrepresentation materially related to the ultimate disability for which the insured is claiming coverage.

In *Mutual Life Insurance Co. v. Morairty*, 178 F.2d 470 (9th Cir.1949), *cert. denied*, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950), the United States Court of Appeals for the Ninth Circuit stated:

> The almost universal rule is that, in the absence of a contrary statute,[6] there need be no causal connection between the cause of death and the misrepresentation, for the reason that the test of materiality of mis-

**6.** At least three states have specific statutory language requiring an insurer to show a causal connection between the misrepresentation and the loss sustained before the misrepresentation

can be considered material. *See* Kan.Stat.Ann. § 40–418 (1993); Mo.Ann.Stat. § 376.800 (Vernon 1991); Neb.Rev.Stat. § 44–358 (1993).

representations is determined by whether or not knowledge of the true facts would, at the time the policy was issued, have increased the risk or influenced the insurer in determining whether to accept or reject the risk.[7]

*Id.* at 475 (footnotes added); *see also* Annotation, *Impairment of Insured's Health or Physical Condition Not Contributing to His Death or Disability as Affecting Insurer's Liability,* 148 A.L.R. 912, 913–17 (1944); Annotation, *Materiality of False Representation, in Application for Policy of Insurance, as to Whether Applicant Has Consulted Physicians,* 131 A.L.R. 617, 620–21 (1941); 7 *Couch on Insurance 2d* § 35:87 (Rev. ed. 1985 & Supp.1994). A majority of jurisdictions follow the universal rule enunciated by the Ninth Circuit in *Morairty. See, e.g. Southern Farm Bureau Life Ins. Co. v. Cowger,* 295 Ark. 250, 256, 748 S.W.2d 332, 336 (1988); *Benson v. Bankers Life & Casualty Co.,* 147 Colo. 175, 178–79, 362 P.2d 1039, 1041 (1961); *Preston v. National Life & Accident Ins. Co.,* 196 Ga. 217, 218, 26 S.E.2d 439, 440 (1943); *Campbell v. Prudential Ins. Co. of Am.,* 15 Ill.2d 308, 313, 155 N.E.2d 9, 11 (1958); *Wickersham v. John Hancock Mut. Life Ins.,* 413 Mich. 57, 67–70, 318 N.W.2d 456, 460–62 (1982); *Howard v. Aid Ass'n for Lutherans,* 272 N.W.2d 910, 912–13 (Minn.1978); *Randono v. CUNA Mut. Ins. Group,* 106 Nev. 371, 375–76, 793 P.2d 1324, 1326–27 (1990); *Bushfield v. World Mut. Health and Accident Ins. Co.,* 80 S.D. 341, 345, 123 N.W.2d 327, 329 (1963).

Interestingly, in *Cowger,* the Supreme Court of Arkansas reexamined the issue of whether an insurer had to establish a causal connection between the misrepresentation and the eventual loss where the insured misrepresented on an application for life insurance that he had not suffered stomach or liver disorders or used alcohol to excess in the last ten years, and in fact, he had been diagnosed during that time period as suffering from cirrhosis of the liver, acute alcoholism, and delirium tremens. The insured was killed within two years after the policy was issued when he was pinned beneath an overturned tractor while mowing. *See* 295 Ark. at 250–51, 748 S.W.2d at 333. The Arkansas Supreme Court, interpreting statutory language almost identical to West Virginia Code § 33–6–7, recognized in *Cowger* that it had previously held in *National Old Line Insurance Co. v. People,* 256 Ark. 137, 506 S.W.2d 128 (1974), *overruled by Cowger,* 295 Ark. 250, 748 S.W.2d 332, that "there must be a causal relation between the misrepresentation and the loss for recovery to be barred[.]" *Cowger,* 295 Ark. at 252–53, 748 S.W.2d at 334.

The *Cowger* court indicated that their previous decision was based, in part, on the following rationale:

'Fairness and reason support the view that a causal connection should be essential. Otherwise, when the insured is killed by a stroke of lightning or by being run over by a car, the insurance company could successfully deny liability by showing that the insured was suffering from diabetes when he stated that he was in good health.'

*Id.* at 253, 748 S.W.2d at 334–35 (quoting *People,* 256 Ark. at 142, 506 S.W.2d at 131). However, upon reflection the Arkansas Supreme Court opined

With respect to the fairness and justice statements made in our opinion in the *National Old Line* case we must point out that there are counter-considerations. The policy we have adopted is that regardless of a misrepresentation which causes the insurer to undertake a risk, liability will occur unless the loss is related to the fact misrepresented. This places the policy applicant in the position of being able to gamble that he or she will not sustain a loss caused by the existence of the fact misrepresented. The misrepresentation may or may not have an effect. The party defrauding the insurance company may or may not be rewarded. On the other hand, the honest applicant who has the same facts to reveal will be denied insurance because of telling the truth.

*Health & Life Ins. Co.,* 97 Idaho 668, 673–74, 551 P.2d 623, 628–29 (1976); *Schneider v. Minnesota Mut. Life Ins. Co.,* 247 Mont. 334, 339–40, 806 P.2d 1032, 1036 (1991).

---

7. The determination of whether a misrepresentation is material is a question of fact. *See State Farm Ins. Co. v. Whiddon,* 515 So.2d 1266, 1267 (Ala.Civ.App.1987); *Wardle v. International*

It may be that these policy consider-ations balance each other. We might even conclude, if it were up to us, that the fairness and justice considerations do come down somewhat on the side of the insured who has lied in order to obtain coverage. Our point is, however, that the decision has been made by the body properly charged with making such decisions, that is, the general assembly. We incorrectly ignored their decision in the *National Old Line* case and we now correct our error.

In reaching this result, we are not alone. In his 1981 article cited above, Professor Adams reported that of seventeen states which had adopted statutory rules on mis-representation resembling our statute none had construed such a statute as incor-porating the kind of causation requirement found in the *National Old Line* case, and at least three states had rejected such a reading. We have found cases published since the date of the article reflecting our earlier position . . ., and none adopting it.[8] *Id.* at 255–56, 748 S.W.2d at 335–36 (citing D.F. Adams, *Misrepresentation in Procure-ment of Insurance: The Arkansas Law,* 4 UALR L.J. 17 (1981)) (footnote added and citations omitted). Therefore, the *Cowger* court ultimately held that "an insurer may defend a policy claim on the ground of a misrepresentation which caused the issuance of the policy but with respect to which the fact or facts misrepresented were not neces-sarily related to the loss sustained. . . ." 295 Ark. at 256, 748 S.W.2d at 336.

Likewise, the Supreme Court of Michigan in *Wickersham* in holding that an insurer need not establish a causal relationship be-tween a misrepresentation by an insured on an application for insurance and the matter which caused the loss, applied the reasoning used by the *Cowger* court:

[C]onsideration of some of the inequitable consequences that would flow from the requirement of showing a causal relation indicate that such an interpretation is not persuasive. If an applicant disclosed his or her medical history and such history was material under . . . [the pertinent stat-utory provisions], this applicant would fail to get a policy. On the other hand, the beneficiary of an applicant who had con-cealed his or her material medical history could receive policy benefits. A showing that it would not have accepted the risk would not aid the insurer. The fact that an applicant might be uninsurable would have no relevancy. The only issue would be whether the misrepresentation had a causal relation to the insured's death. Proving the particular cause of death and all of its contributing factors is not always possible. Accordingly, absent clear di-rection, we cannot conclude that the Legis-lature intended to place applicants who deliberately misrepresent or conceal mate-rial facts in such an advantageous legal position as compared to those who reason-ably disclose them.

413 Mich. at 69–70, 318 N.W.2d at 461–62; *see Howard,* 272 N.W.2d at 912–13 (holding that "the focal examination must be whether an omission or misrepresentation substantial-ly affects or impairs an insurer's ability to make a reasonable decision to assume the risk of coverage").

While we are persuaded by the majority position, we are mindful that we have previ-ously held that West Virginia Code § 33–6–7 "is to be liberally construed in favor of the insured," and, therefore, we are troubled somewhat by the possibility that an insured's innocent misrepresentation concerning a seemingly minimal ailment,[9] totally unrelated

---

8. *But see Unionmutual Stock Life Ins. Co. of Am. v. Wilkerson,* 367 So.2d 964, 967 (Ala.Civ.App. 1978).

9. Although there appears to have been a misrep-resentation concerning the insured having con-sulted with a physician (Dr. Settle) and having taken medication (or at least having had it pre-scribed) in the five years prior to the completion of the application, it would be difficult to argue that a young woman who seeks counselling over the break-up of a relationship or for pre-menstru-al syndrome could be said to have suffered a "mental disorder."

Furthermore, the insurer may have a difficult time convincing a finder of fact that it would have refused to issue any policy of disability insurance (or even a policy covering only physi-cal, as opposed to mental, disability) to an other-wise healthy thirty-two-year old woman if her history of minor counselling problems had been known.

to the insured's disability, would result in the insurer avoiding liability on the insurance policy. Syl. Pt. 2, *Powell,* 181 W.Va. at 290, 382 S.E.2d at 343. In *Unionmutual Stock Life Insurance Co. of America v. Wilkerson,* 367 So.2d 964 (Ala.Civ.App.1978), the insurer discovered that the insured omitted on his application for disability insurance that he had a cataract disorder and had been seen by a physician on two occasions for various complaints in the last five years, when the insured applied for benefits due to thyroid cancer. *Id.* at 966. The insurer voided the policy based on the misrepresentations, and the insured filed an action to recover the benefits. *Id.*

In affirming a jury verdict in favor of the insured, the *Wilkerson* court, addressing whether the misrepresentations made by the insured were material, stated that "in order for ... [the insurer] to avoid liability on the insurance policy, it must appear that the misrepresentations relate to some serious ailment material to the question of the potential disability of the insured." *Id.* at 967. Based on a review of the evidence presented before the jury, the court declined to hold as a matter of law that the misrepresentations made by the insured materially increased the insurer's risk of loss. *Id.* at 970; *see* Syl. Pt. 5, *Preston,* 196 Ga. at 218, 26 S.E.2d at 440 (holding that "[w]hile a false statement as to consultation or treatment for a slight or trivial ailment may not without more be considered as a material misrepresentation, so as to avoid the policy, yet the illness need not be shown to have been serious, the true criterion being as in case of misrepresentations as to other matters, substantial increase in risk"); *Bushfield,* 80 S.D. at 345, 123 N.W.2d at 329 (stating that "failure to mention a minor or temporary ailment is not material to the risk and will not avoid the policy").

█ Accordingly, we temper the majority rule in holding that generally, in order to affirmatively defend a claim under a disability insurance policy an insurer need not prove a causal connection between the facts misrepresented, omitted, concealed, or incorrect on an insurance application and the disability sustained. The insurer, however, must show that the misrepresentation, omission, con-

cealment of fact, or incorrect statement substantially affected or impaired its ability to make a reasonable decision to assume the risk of coverage. Further, an insured may defeat this defense by setting forth evidence that the misrepresentation, omission, concealment of fact, or incorrect statement related to a minor ailment suffered by the insured which was so unrelated and disconnected from the disabling condition suffered by the insured that it could not have possibly been material with respect to the issuance of the policy.

Having answered the certified questions presented by the United States District Court for the Southern District of West Virginia, we hereby dismiss this case from the docket of this Court.

Certified questions answered; Case dismissed.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.